**UNITED STATES of America**
**v.**
**Vincenzo CONSIGLIO et al.**
**Crim. No. H–24.**

United States District Court,
D. Connecticut.

April 20, 1972.

Paul E. Coffey and James E. Kelley, Hartford, Conn., Stewart H. Jones, U. S. Atty., for plaintiff.

Joseph Licari, Jr., New Haven, Conn., for Fred Campagnuolo.

W. Paul Flynn, New Haven, Conn., for Vincenzo Consiglio.

J. Daniel Sagarin, Bridgeport, Conn., for James DeNegris, Jr.

Charles A. Pulaski, Jr., New Haven, Conn., for Carmello Coco.

Milton I. Caplan, New Haven, Conn., for John Laudano.

John Cassidento, West Haven, Conn., for Gary Jay Zimmerman and Diane Zimmerman.

William P. Murray, Hartford, Conn., for Joseph Patrick DiPietro.

John P. McKeon, Hartford, Conn., for Benjamin Kaner.

### RULING ON DEFENDANTS' MOTIONS TO SUPPRESS AND DISMISS

CLARIE, District Judge.

All of the defendants have been indicted for both substantive and conspiracy violations of the interstate gambling laws. They have moved pursuant to 18 U.S.C. § 2518(10) (a) to suppress evidence accumulated against them by the interception of wire communications on the ground that the applications for wiretap orders were not properly authorized under 18 U.S.C. § 2516(1).[1] The Court concludes that the Government did in fact comply with the wiretap authorization statute and the defendants' motions to suppress and dismiss are accordingly denied.

### Statement of Facts

On February 18, 1970 and April 7, 1970, in Miami, Florida and Hartford, Connecticut respectively, Special Attorneys of the Department of Justice submitted sworn applications to United States District Judges for orders permitting the interception of wire communications pursuant to 18 U.S.C. § 2518. The sworn applications in both cases included a paragraph 2, which substantially reads as follows:

"2. Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has specially designated the Assistant Attorney General for the Criminal Division of the Department of Justice, the Honorable Will Wilson, to authorize affiant to make this application for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A." [2]

Exhibit A in each case purports to be a letter addressed to the attorney presenting the application and signed by "Will Wilson, Assistant Attorney General." It asserted that, after reviewing the request for permission, together with the surrounding facts and circumstances, Wilson had made certain findings of probable cause. Based upon these findings, and acting under the power of the Attorney General, which the latter had specially delegated to him, under 18 U.S.C. § 2516, Wilson thereupon authorized the named government attorney to apply for the interception order.

The United States District Judges in each instance found probable cause and granted the applications. In conformity with the requirements of § 2518(4) (d),

---

1. 18 U.S.C. § 2516(1) reads in pertinent part as follows:

 "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception

 of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made . . . ."

2. The language quoted is from the Connecticut application. Paragraph 2 of the Florida application is worded slightly differently.

the interception orders stated certain findings, one of which was that the Application presented to the Court had been

" . . . authorized by the Assistant Attorney General for the Criminal Division of the Department of Justice, the Honorable Will Wilson, who has been specially designated by the Attorney General of the United States, the Honorable John N. Mitchell, to exercise the powers conferred on him by Section 2516 of Title 18, United States Code."

On January 5, 1972, however, the Government upon learning that Will Wilson had not in fact personally signed the authorization, confessed error. It disclosed that Will Wilson had not personally authorized either application, and further that he had not signed either of the letters which had been submitted to the issuing judges. The affidavit of Henry E. Petersen, who at the time in question was a Deputy Assistant Attorney General in the Criminal Division and now Chief of the Criminal Division, indicated that Mr. Petersen signed the name of Will Wilson to the authorization communications to the attorneys in the field. Sol Lindenbaum, the Executive Assistant to the Attorney General of the United States, stated in an affidavit that the Attorney General himself had personally approved the requests for authority to apply for the wiretaps in this case. His affidavit referred the Court to the "personally initialed" memorandums of the Attorney General to Will Wilson, "specially designating him to authorize" the attorneys in the field to apply for the interception orders. Copies of the Attorney General's authorizations for wiretaps to Will Wilson, in both Florida and Connecticut respectively, are included in the appendix to this opinion.

Mr. Petersen in a supplementary affidavit set forth the routine administrative procedures regularly followed by the Justice Department in authorizing these wiretap applications. The requests to make such applications to the courts were required to be approved by the Attorney General himself, by his personally initialing each approved authorization; and the letters of notification to the applicant field attorney, that he had been authorized to present the applications to the court, were sent to him over the name of "Will Wilson," the head of the Criminal Division. Mr. Petersen stated that he had been authorized by Mr. Wilson to sign Will Wilson's name, to these notifications of authorization letters, in each instance where the Attorney General had previously personally initialed his approval of the wiretap.

It is the Government's position that the discretionary act of authorization required by § 2516(1) was performed by the Attorney General himself, when he personally initialed the memorandum to Will Wilson. The letters from Will Wilson, in fact signed by Henry Petersen, to the attorneys in the field, were merely ministerial notifications of the authorizations which had been approved by Attorney General Mitchell himself.

The defendants attack the Government's authorization claims on several grounds:

(1) The Lindenbaum and Petersen affidavits are inadmissible to factually establish that Attorney General Mitchell personally initialed these memorandums because the affidavits (a) constitute hearsay, (b) they purport to establish the authority of the affiants to act as agents solely through their own self-serving assertions, (c) they state conclusions of law, and (d) they purport to set forth facts known to the affiants without establishing a proper foundation;

(2) even assuming the Attorney General personally initialed the memorandums, there is no evidence to indicate that he evaluated and carefully screened the requests for authorization to make the wiretap applications;

(3) by virtue of the specific representation to the issuing judges that Will Wilson authorized the wiretap applications, the Government is estopped

from now asserting that Attorney General Mitchell himself made the discretionary decision to authorize;

(4) by knowingly misrepresenting to the issuing judges the identity of the official authorizing the applications, Mr. Petersen misrepresented material facts to the courts, and these misrepresentations warrant the Court's refusing to accept the Government's changed position; and finally,

(5) the evidence stemming from the Florida wiretap should be suppressed, because the Government did not present to the judge who ordered that wiretap, any evidence from which he could have concluded that Mr. Mitchell actually authorized the application [3], and the Connecticut wiretap should also be suppressed, because the probable cause for its issuance was tainted by evidence arising from the improper Florida wiretap.

### Question Presented

Whether the evidence obtained by the interception of electronic communications under Title III, Omnibus Crime Control and Safe Streets Act of 1968 (82 Stat. 211) is subject to suppression on the ground that the applications for interception orders were not properly authorized within the meaning of 18 U.S.C. § 2516(1).

### Discussion of the Law

While there may be some justification for counsel's criticism of the loose administrative procedures used by the Government in processing wiretap authorizations, the recent decision by the Court of Appeals in United States v. Pisacano, 459 F.2d 259 (2d Cir. April 7, 1972) has laid down the rule of law to be followed in this Circuit on such matters and is largely dispositive of the issues raised here. Under a different procedural background, the Court decided that the district judge did not abuse his discretion in refusing to permit the defendants to withdraw guilty pleas after they became apprised of the decision of the Fifth Circuit in United States v. Robinson (5th Cir. Jan. 12, 1972) (No. 71–1058). In deciding that question, the Court in *Pisacano* "concluded that the Justice Department's procedures were very likely consistent with the mandate of § 2516(1)." *Pisacano, supra,* 459 F.2d at 264 n. 5. The disclosure of the Justice Department's routine administrative procedures presented to the *Pisacano* court was essentially the same as that which is now set forth by the Government here.

■ The Court of Appeals requested the Government to furnish the *Pisacano* court with affidavits setting forth the Justice Department's structural handling of the request for authorization to make the wiretap application. These affidavits [4] indicated that the Attorney General himself initialed and approved the request for authorization, and that Mr. Wilson was "designated" by the Attorney General simply to perform the "ministerial act" of physically authorizing the attorneys in the field to make the application. The Court of Appeals indicated no reluctance to accept the affidavits as proper evidence of the Justice Department's procedures. It is, of course, significant that the affidavits in

---

3. The Government did present to the issuing judge in Connecticut the initialed memorandum of Mr. Mitchell to Mr. Wilson. But the Government's theory of authorization at that time, accepted by the issuing judge, was that Mr. Wilson had authorized the application, pursuant to the authority granted to him by Mr. Mitchell to make that decision, in accordance with § 2516(1). Although the Attorney General personally initialed a similar memorandum authorizing the Florida wiretap, that memorandum was not presented to the issuing judge.

4. The Court referred specifically only to an affidavit submitted by Mr. Lindenbaum. *Pisacano, supra,* at 261. The official court file reveals that Mr. Petersen and Mr. Wilson also submitted affidavits, and that Mr. Mitchell did not.

no way bear upon the guilt or innocence of the defendants, but concern only preliminary matters of administrative procedure. The Court concludes that the affidavits filed in this case are similarly admissible for this limited purpose. *See also,* United States v. Robinson, *supra*; United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga. Feb. 11, 1972). The Court further finds that these affidavits constitute a sufficient proof of the genuineness of the Attorney General's signature. Approval by initialing is an administrative method commonly followed by the judges of the Court of Appeals itself.

 The defendants also question whether there is sufficient evidence to indicate that the Attorney General properly authorized the requests to make the application. The defendants contend that the legislative history of Title III of the Omnibus Crime Control and Safe Streets Act of 1967 demonstrates that the intent of the statute was to require a careful evaluation and screening of such requests by the Attorney General or a specially designated Assistant Attorney General. The Government is under no duty to establish the degree of consideration which the Attorney General gave the requests. In *Pisacano,* the

Court of Appeals concluded that the Attorney General's initialing the authorization memorandum was sufficient:

"The August 12 and 27 requests were approved by the Attorney General himself, in the first case by his initialling a memorandum, and in the second by specific telephone authorization to Mr. Lindenbaum to do so. Clearly these complied with § 2516(1), no matter how strictly read." *Pisacano, supra,* 459 F.2d at 263.

*See also,* United States v. Doolittle, *supra.*[5] In accord with the intent of § 2516(1), the Attorney General, a politically responsible official, exercised his discretion, centrally formulated, in deciding to authorize these applications. United States v. Robinson, *supra.*

 The defendants further argue that because the Government represented to the issuing judge that Mr. Wilson authorized the wiretap applications, it is now estopped from asserting that the Attorney General himself did so. This argument must fail because the defendants have not shown any prejudice to them, which stems from their reliance upon the Government's initial representations.[6] "The essential element

---

5. In *Doolittle,* the Court pointed out that "(t)he requirement of § 2516(1) is simply that the Attorney General 'authorize an application.' The method and manner of his authorizing is not prescribed."

6. Along the lines of their estoppel argument, the defendants contend that the "misrepresentation" of the Justice Department, particularly of Mr. Petersen who signed Mr. Wilson's name to the letter, which appeared to be the actual authorization, should preclude this Court's crediting the position now advanced by the Government. The affidavits submitted indicate that the authorization was in fact made by the Attorney General; it would therefore, in no way have benefited the Government to deceive the Court into thinking that the Assistant Attorney General made the authorization. The Court concludes that the Department of Justice

did not effect a material fraud upon this Court.

It is relevant to note that the Court in *Pisacano* concluded that the authorizations were not

". . . invalid in light of 28 U.S.C. § 2518(1) (a) & (4) (d) which require that the application and the court order indicate the officer authorizing the application. While Will Wilson was identified as the authorizing officer when in fact the Attorney General or Mr. Lindenbaum had approved the applications, this discrepancy did not meaningfully subvert the congressional scheme. The legislative history indicates that the purpose of both subparagraph (1) (a) and subparagraph (4) (d) of § 2518 was simply to ensure 'that responsibility will be fixed.' S.Rep. No. 1097, *supra,* 1968 U.S.Code Cong. & Adm.News at [pp.] 2192 & 2189. Perhaps the procedures

of a misleading of (defendants) to their harm is strikingly absent." Spivak v. United States, 370 F.2d 612, 615 (2d Cir. 1967), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). *See also*, Freedman v. The Concordia Star, 250 F.2d 867, 869 (2d Cir. 1958); Talanoa v. Immigration and Naturalization Service, 397 F.2d 196, 200–201 (9th Cir. 1968). It is therefore unnecessary to decide whether, if otherwise applicable, estoppel is a good defense against the United States in a criminal proceeding. *See, e. g.*, Peignand v. Immigration and Naturalization Service, 440 F.2d 757, 761 (1st Cir. 1971).

▆ Finally, the defendants contend that the original Florida wiretap, and as a result that made subsequently in Connecticut which relied in part upon it, are invalid because the Government did not present to the issuing judge in Florida the personally initialed memorandum of Attorney General Mitchell. The defendants seem to attach significance to the fact that the Florida court had no evidence before it from which it could have concluded that the Attorney General himself authorized the application. But a reading of *Pisacano* makes it clear that the Court of Appeals was primarily concerned with whether in fact the appropriate official authorized the application. The failure to present the Attorney General's memorandum to the issuing judge in the Florida proceeding is deemed immaterial.

The motions of the defendants to suppress the wiretap evidence and to dismiss are denied. So ordered.

adopted by the Justice Department were not the best for ascertaining the official who exercised the 'responsibility' for authorizing applications as prescribed in § 2516(1); but, as is evident from this

case, that procedure does nonetheless ensure that the responsible official be reasonably identifiable." *Pisacano, supra*, 459 F.2d at 264, n. 5.