UNITED STATES of America,
Plaintiff-Appellant,

v.

Umberto Jose CHAVEZ et al.,
Defendants-Appellees.

No. 72-2240.

United States Court of Appeals,
Ninth Circuit.

Feb. 28, 1973.

John J. Robinson, Atty. (argued), Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellant.

William L. Osterhoudt (argued), Andre T. Laborde, Peter G. Keane, San Francisco, Cal., James Giller, Oakland, Cal., Jerald H. Wilhelm, Newark, Cal., Earle A. Partington, Deputy Federal Public Defender, San Francisco, Cal., Clinton White, J. Bradley Klemm, Murray Petersen, Claude Allen, Oakland, Cal., Paul Alvarado, San Francisco, Cal., for defendants-appellees.

Before BARNES, BROWNING, and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

This case is in most respects similar to United States v. King, 9 Cir., 1973, 478 F.2d 516, decided today. However, it differs in one important respect.

Umberto Chavez, James Fernandez, and ten others were indicted for conspiring to import and distribute heroin in the United States, a violation of 21 U.S.C. §§ 173, 174. Chavez and Fernandez were also charged with various activities prohibited by 18 U.S.C. § 1952. The government's case was largely derived from two wiretaps, one of Fernandez' telephone in Union City, California, and one of Chavez' telephone in Fremont, California. The district court held that these wiretaps had been conducted in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, and ordered their fruits suppressed. The government appeals under 18 U.S.C. § 3731; we affirm.

■ The procedures by which the Fernandez tap was authorized are identical to those described in United States v. King, *supra*. As in *King*, the application to the district judge identified Assistant Attorney General Will Wilson as designated by the Attorney General under 18 U.S.C. § 2516 to authorize the application. It was accompanied by a Will Wilson letter substantially the same as that in *King*. As in *King*, the District Judge's order identified Wilson as the person authorizing the application. As in *King*, practically everything stated in the Wilson letter is false. As in *King* there are affidavits by Harold Shapiro, Sol Lindenbaum and Will Wilson. There is no affidavit by former Attorney General Mitchell, but this is immaterial because the Lindenbaum affidavit fully discloses that the Attorney General had chosen not to designate an Assistant Attorney General to authorize applications for interceptions, but had required that all such applications be referred to him for consideration. It also discloses that it was Lindenbaum, not Mitchell, who approved the application. As in *King*,

there is a Memorandum, purportedly from Mitchell but actually from Lindenbaum, to Wilson. The relevant content of all of these papers is practically identical to the content of those in *King*. This is the proverbial "spotted cow" case. As to the Fernandez tap, the order must be affirmed for the reasons stated in *King*.

■ However, the Chavez tap presents the issue that we expressly reserved in *King*, namely, whether misidentification of the person who authorized the application for a wiretap requires suppression of its fruits. 478 F.2d at 503 n. 4. In the application by the Justice Department attorney Merten to the District Judge there is the same recital about Wilson as in *King* and there is the same Wilson letter. There is the same identification of Wilson in the Judge's order. The Wilson letter is just as false as that in *King*. As in *King*, there are affidavits. One is by Henry E. Petersen, who was at the time a Deputy Attorney General in charge of the Criminal Division of the Department of Justice. It is substantially the same as the Shapiro affidavit in *King*. The Lindenbaum affidavit is like that in *King*, but, as to the Chavez tap, it says:

> "On February 16, 1971, and February 25, 1971, the Criminal Division of the Department of Justice addressed to the Attorney General requests for approval of authorization to apply for interception orders with respect to certain telephones in California. The first request related to a telephone in Fremont, California, allegedly used by Umberto Jose Chavez and others. The second related to a telephone in Union City, California, allegedly used by a person identified only as 'Pelone' and others. In each instance, the request was accompanied by copies of the proposed affidavit, application, and order, as well as a recommendation for approval from the Criminal Division.

> "With respect to the first, the Attorney General on February 18, 1971, approved the request that the author-

ization be given to Maurice Merten to make application for an interception order with respect to the mentioned telephone in Fremont, California. Attached is a copy of the Attorney General's personally initialed memorandum of that date to Will Wilson reflecting his favorable action on the request."

The Wilson affidavit is like that in *King*. There is an affidavit by former Attorney General Mitchell, which we quote in full:

"John N. Mitchell, being duly sworn, deposes and says:

"I held the office of Attorney General of the United States from January 21, 1969, through March 1, 1972.

"On February 18, 1971, I approved a request for authority to apply for an interception order in this case and personally initialed a memorandum of that date reflecting my favorable action on the request. I have examined the original of this memorandum and certify that it bears my initials which were personally affixed by me on February 18, 1971. Attached is a copy of my personally initialed memorandum of that date reflecting my favorable action on the request.

"My memorandum of approval in this case constituted a notification to the Assistant Attorney General of the Criminal Division that the discretionary action of approving the request to make application to the court for an interception order was taken by me."

The attached Memorandum is as follows:

Date: Feb 18 1971
JNM:PTW:1rt

"To: Will Wilson
Assistant Attorney General
Criminal Division

From: John N. Mitchell
Attorney General
JNM

Subject: *Interception Order Authorization*

This is with regard to your recommendation that authorization be given to Maurice K. Merten of the Criminal Division to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a twenty (20) day period to and from telephone number 415–656–7173, located at 220 Carmelita Place, Fremont, California, in connection with the investigation into possible violations of Title 21, United States Code, Section 174, and Title 26, United States Code, Sections 4704 and 7237, by Umberto Jose Chavez, Lionel Medina Costilla, Jose Ybarra-Rivera, and others as yet unknown.

Pursuant to the power conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise that power for the purpose of authorizing Maurice K. Merten to make the above-described application."

It is apparent that the only differences between the authorization of the Chavez tap and the authorization of the *King* taps are these. First, the Attorney General did see the request for an authorization and did approve the request. Second, he personally initialed the memorandum to Wilson.

Nevertheless, we are as much struck by the contrast between the contents of the affidavits and the recitals in the Mitchell memorandum, the Wilson letter, and the Merten application as we were in *King*.

The Merten application to the District Judge recited:

"3] Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has specially designated in the proceeding the Assistant Attorney for the Criminal Division of the United States Department of Justice, The Honorable Will Wilson, to authorize affiant to make this application for an Order authorizing the interception of wire communications. This letter of authorization signed by the Assistant Attorney Gen-

eral is attached to this application as Exhibit A."

This recital is entirely consistent with the Attorney General's memorandum of February 18, 1971, quoted above, but is hardly consistent with what the former Attorney General now says in his affidavit, or with the Lindenbaum affidavit. The Wilson letter attached to the application, recites:

"Accordingly, you are hereby authorized under the power specially delegated to me in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the power conferred on him by Section 2516 of Title 18, United States Code, to make application to a judge of competent jurisdiction for an Order of the Court pursuant to Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Narcotics and Dangerous Drugs and the Bureau of Customs, United States Department of the Treasury, to intercept wire communications from the facility described above, for a period of twenty (20) days."

It also recites review of the request for authorization by Wilson, not Mitchell, and determinations made by Wilson, not Mitchell.

Undoubtedly these representations caused the judge to state in his order:

"Special Agents of the Bureau of Narcotics and Dangerous Drugs, United States Department of Justice and Special Agents of the United States Customs Agency Service, Bureau of Customs, Department of Treasury, are authorized, pursuant to the application authorized by the Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Will Wilson, who has been specially designated in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, to exercise the powers conferred on the Attorney General by Section 2516 of Title 18, United States Code, . . ."

As we said in *King, supra,* we can see no rational explanation for the elaborate paper charade of the Mitchell memorandum, the Wilson letter, and the Merten application, unless it be to deceive the Congress and the court. That it did deceive the Judge, we have no doubt.

The rather extraordinary discrepancies between the application, the Wilson letter and the Mitchell memorandum, on the one hand, and the affidavits, on the other, led counsel to argue to the District Judge that he should find, contrary to Mitchell's *ex post facto* affidavit, that Mitchell had not personally approved the request. This, however, the Judge refused to do. He assumed that Mitchell had approved it, and so do we. Thus there was substantial compliance with Section 2516(1).

However, there certainly was not compliance with Section 2518(1)(a) which requires that "Each application for an order . . . shall . . . include . . . the identity of . . . the officer authorizing the application," or with Section 2518(4)(d) which requires that the order do likewise. There was not merely an omission of the required information; there was a misrepresentation, in circumstantial and carefully phrased detail, all pointing to Wilson as the officer authorizing the application, when in fact he did no such thing.

The government argues that there has been "substantial compliance" with Section 2518. Pointing to the legislative history of the Act, which states that Sections 2518(1)(a) and (4)(d) were designed to "fix responsibility" for the authorization of wiretaps, it argues that the responsible official is "reasonably identifiable" since the "lines of responsibility lead to" Attorney General Mitchell. It relies heavily upon the fact that most courts which have faced the precise

question involved here have refused to order suppression.[1]

We are not persuaded, either by the argument or the cases. Although we agree that the purpose of Section 2518(1)(a) and (4)(d) was to fix responsibility, see S.Rep.No.1097, quoted in 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2189, 2192, we do not believe that this means the general responsibility of an agency head for the actions of his subordinates. The phenomenon of the "institutional decision" is familiar to anyone who has had dealings with a bureaucracy. Basically, it is a decision which, although signed by a publicly responsible official, is made by the organization rather than by the official. *See generally* B. Schwartz, An Introduction to American Administrative Law 144–48 (1962); 2 K. Davis, Administrative Law Treatise § 11 at 36–38 (1958). Such a decision may be justified by the press of agency business or the expertise of the agency staff. However, it has the defect of obscuring from public view the identity of the persons making the decision and the factors which influenced their formulation of policy. Because of the sensitive nature of wiretapping and the grave threat to privacy which it represents, *see* United States v. King, *supra*, 478 F.2d at 513, we conclude that Congress intended to eliminate any possibility that the authorization of wiretap applications would be institutional decisions. It therefore provided that only a few specifically identified and publicly responsible officials could make such decisions, 18 U.S.C. § 2516(1), and that their identity must be disclosed in the application and court order. 18 U.S.C. § 2518(1)(a) and (4)(d).

For us to sanction the procedure used in this case would be to defeat the Congressional scheme. As we have shown, the application, order, affidavits, and memoranda submitted to the District Court in connection with the motion to suppress are contradictory. The court would have to engage in considerable sifting and evaluating to determine which of the rather substantial cast of characters actually approved Merten's request, and even then it could not be certain. It is precisely this type of "button, button, who's got the button" guessing game that is characteristic of the institutional decision, and that Congress intended to eliminate by Section 2518 (1)(a) and (4)(d).

The government's argument suffers from a second defect. Although former Attorney General Mitchell assumed responsibility after the fact in this case, were we to approve this procedure there would be nothing to prevent future Attorneys General from remaining silent if a particular wiretap proved embarrassing. *Cf.* United States v. Giordano, *supra* note 1, 469 F.2d at 528. The Wilson letter and the Mitchell memorandum were carefully drawn to create the illusion of compliance with the Act. Without Mitchell's affidavit, the lines of responsibility lead to Wilson, not to Mitchell. The quality of administrative action increases when officials know that their

---

1. The vast majority of courts have either accepted the government's argument that Section 2518 has been substantially complied with, or have held that any violation was harmless. United States v. Ceraso, 3 Cir., 1972, 467 F.2d 647; United States v. Cox, 8 Cir., 1972, 462 F.2d 1293, 1297–1300; United States v. Becker, 2 Cir., 1972, 461 F.2d 230, 235; United States v. Pisacano, 2 Cir., 1972, 459 F.2d 259, 263; United States v. Whitaker, E.D.Pa., 1972, 343 F.Supp. 358; United States v. Consiglio, D.Conn., 1972, 342 F.Supp. 556; United States v. Doolittle, M.D.Ga., 1972, 341 F.Supp. 163; United States v. D'Amato, E.D.Pa., 1972, 340 F.Supp. 1020, 1021; United States v. Iannelli, W.D.Pa., 1972, 339 F.Supp. 171, 174; United States v. Aquino, 1972, E.D.Mich., 338 F.Supp. 1080, 1081; United States v. LaGorga, W.D.Pa., 1971, 336 F.Supp. 190, 195; United States v. Cantor, E.D. Pa., 1971, 328 F.Supp. 561. Contra, United States v. Focarile, D.Md., 1972, 340 F.Supp. 1033, 1051–1060, aff'd, sub nom. United States v. Giordano, 4 Cir., 1972, 469 F.2d 522. We find it significant that Judge Miller's opinion in *Focarile* is the only one cited above which attempts a detailed inquiry into the purpose of Section 2518 and its relationship to Section 2516(1).

decisions cannot escape direct scrutiny by the courts, Congress, and the public. *See* K. Davis, Discretionary Justice 111–16 (1969). We refuse to read the safeguard of openness out of the Act, contrary to Congressional intent, by emasculating Section 2518(1)(a) and (4)(d).

In sum, we hold that the identification requirements of Section 2518(1)(a) and (4)(d) complement the authorization requirement of Section 2516(1). Without the former, the latter would be meaningless: it would be impossible to determine whether the Attorney General or one of his nine Assistant Attorneys General or someone else was actually responsible for the decision to authorize application for a wiretap. Despite the authority to the contrary, we refuse to interpret the authorization requirement strictly, see United States v. King, *supra*, and to wave away the identification provisions as mere technicalities. To do so in this case would be to countenance an apparently deliberate deception of the courts by the highest law officers in the land. The Supreme Court, the Courts of Appeals and the District Courts have traditionally relied upon the integrity of representations made to them by such officers. If we were to uphold what they did here, the door would be open to similar behavior in other cases, and the trust of the courts in the Attorney General and his Assistant Attorneys General, so vital to the efficient and effective conduct of judicial business, would soon be destroyed.[2]

In his Memorandum and Order granting the motions to suppress in this case Judge Weigel said:

> "By plaintiff's own admission, it is clear that in the case of both wiretaps: (1) Chief Judge Carter was misinformed by plaintiff as to the name of the individual who had authorized application; and (2) the only individual named in the application had never examined it, much less exercised dis-

cretion to authorize it. No clearer evidence could be adduced to show complete frustration of the opportunity for Congressional and public scrutiny required by the statute as a means to protect Fourth Amendment rights. The applications for these wiretaps (as well as the orders relying on them) erroneously show that they were authorized by the same man. In fact, neither of the individuals who authorized the applications was in any way identified to Chief Judge Carter, Congress or the public. Evidence secured through the wiretaps must therefore be suppressed for failure to follow the Congressional mandate set out in §§ 2518(1)(a) and 2518(4)(d)."

We agree.

The order appealed from is affirmed.

---

2. The one commendable thing that we find in this case is the apparent candor of the former Attorney General and his subordinates, once the problem was brought to light. We rely on their affidavits, as did the District Judge.