# UNITED STATES of America
### v.
## Martin SKLAROFF et al., (four cases).

# UNITED STATES of America
### v.
## William SKLAROFF et al.

### Crim. Nos. 70–143, 71–612, 71–613, 71–614 and 71–711.

United States District Court,
S. D. Florida.

May 24, 1973.

See also D.C., 323 F.Supp. 296.

Dougald D. McMillan, J. Robert Sparks, Marilu Marshall, Dept. of Justice, Miami, Fla., for the United States.

Cohen and Hogan, Miami Beach, James J. Hogan, E. David Rosen, Miami, Fla., I. Albert Lehrer, Washington, D. C., Alvin Sellman, Baltimore, Md., Oscar B. Goodman, Las Vegas, Nev., Donald I. Bierman, Miami, Fla., and Richard H. Siegel, Cleveland, Ohio, for defendants.

## ORDER SUPPRESSING EVIDENCE OBTAINED BY ELECTRONIC SURVEILLANCE

MEHRTENS, District Judge.

The first of the above-styled cases is before the Court upon remand by the United States Court of Appeals, United States v. Sklaroff, No. 71–2948 (5th Cir. January 30, 1973), for further consideration in light of United States v. Robinson.[1] The other four captioned cases have been awaiting trial, but proceedings had been stayed by this Court pending the Fifth Circuit's decision in *Robinson*.

All of the instant cases and others either pending in or on remand to this

---

1. 468 F.2d 189 (5th Cir. 1972) (panel opinion); 472 F.2d 973 (5th Cir. 1973) (en banc opinion); 359 F.Supp. 52, (S.D.Fla., 1973) (findings and conclusions upon remand).

district were consolidated before the undersigned for evidentiary hearing to determine whether the applications for electronic interception orders presented to the judges of this Court were properly authorized. That hearing was held on March 19–20, 1973. The Court heard the testimony of John N. Mitchell, former Attorney General of the United States; Will Wilson, former Assistant Attorney General in charge of the Criminal Division of the Department of Justice; Henry E. Petersen, now Assistant Attorney General in charge of the Criminal Division and at all times relevant to these cases a Deputy Assistant Attorney General in the Criminal Division; Sol Lindenbaum, Executive Assistant to the Attorney General; and Harold Shapiro, then and currently a Deputy Assistant Attorney General in the Criminal Division. Numerous exhibits were received in evidence. Argument was heard and all counsel were given leave to file supplementary memoranda of law. The Court, having reviewed the court files, the record of the evidentiary · hearing and all memoranda submitted, makes the following findings of fact and conclusions of law.

The evidence upon which the indictments in all of the instant cases are based, as well as the convictions in No. 70–143–CR–WM, emanates from a single wiretap. On or about June 16, 1969, John N. Mitchell, then Attorney General of the United States, placed his initials upon a Department of Justice Memorandum to Will Wilson, the Assistant Attorney General in charge of the Criminal Division. That memorandum, Government's Exhibit 2 at this Court's hearing, read, in pertinent part, as follows:

"This is with regard to your recommendation that authorization be given to William G. Earle of the Criminal Division to make application for an interception order under 18 United States Code, § 2518, permitting the intercaption of wire communications to and from four pay telephones at the Miami International Airport, near the entrance to Concourse 2, between the United and Northwest Airlines counters, carrying phone numbers 691–9981, 691–9561, 691–9797, and 691–9528, in connection with the investigation into possible violations of 18 United States Code, 1084 by Martin Sklaroff and Jesse Sklaroff and others.

Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to authorize William G. Earle to make the above described application."

(Govt. Ex. 2)

This Mitchell memorandum, termed an "Interception Order Authorization" by the Department of Justice, was not forwarded to the attorney in the field, and consequently was not presented to the Court prior to the issuing of the Interception Order on June 17, 1969.

Mr. Mitchell's testimony at the hearing revealed, contrary to the express language of that memorandum, it was he (Mitchell) who had allegedly made the authorization decision under 18 U.S.C. § 2516.[2] It was also discovered at the hearing that Will Wilson had *never* been a "specially designated" assistant attorney general empowered to authorize wiretap applications, even though every document in the record in this case, including the Court's Wire Interception Order of June 17, 1969 contained a recital of the fact that Wilson had been *specially designated* by Mitchell under the terms of Title III.

2. "§ 2516. Authorization for interception of wire or oral communications—
    (1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications . . . " 18 U.S.C. § 2516(1)

The basis of the Court's recital was a letter purportedly sent by Wilson to Earle, Defendants' Exhibit 2, which Mr. Earle presented to this Court in good faith, albeit in ignorance of the fact that Wilson had never even seen the letter, nor had he personally performed any of the activities described therein. Henry Petersen, then Wilson's deputy, testified that he had blanket authority from Wilson "to sign the Assistant Attorney General's name with respect to Title III applications and other matters" and that he had signed Wilson's name to the authorization letter in this case. (Tr. 137) Wilson corroborated Petersen's testimony. (Tr. 258–59) Petersen admitted signing Wilson's name to six out of the eight "Wilson" letters that were introduced into evidence at the hearing.

The "Wilson" letter, presented to the undersigned by Mr. Earle during the Title III conference on June 17, 1969, as his authority to apply for an interception order, reads as follows:

"*I have reviewed* your request and the facts and circumstances detailed in the affidavit of Special Agent Edwin J. Sharpe *and have determined* that probable cause exists to believe that Martin Sklaroff, Jesse Sklaroff, and others are engaged in the commission of an offense enumerated in Section 2516 of Title 18, United States Code, to-wit violation of Section 1084 of Title 18, United States Code, and a conspiracy to violate this statute. *I have further determined that* there exists probable cause to believe that the above persons will make use of the described facilities in connection with that offense, that wire communications concerning the offense will be intercepted, and that normal investigative procedures are unlikely to succeed or are too dangerous to be used.

Accordingly you are hereby authorized under the power *specially delegated to me* in relation to the above described offenses by the Attorney General pursuant to the power conferred on the Attorney General by Section 2516, Title 18, United States Code, to make application to a judge of competent jurisdiction for an order pursuant to Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Investigation to intercept wire communications from the facilities described above." (Defendants' Exhibit 2) (Emphasis added)

Wilson and Petersen each testified that all of the purported first-person declarations contained in that letter were not Wilson's at all, but were, in fact, *institutional* declarations by the Criminal Division of the Department of Justice. (Tr. 151–52, 259–60)

Petersen and Mitchell were aware that the "specially designated/delegated" language was contained in the "Wilson" letters and that the letters were being presented to federal judges as part of the documentation utilized to procure wiretap orders, although Mitchell did not know that Wilson was not personally signing them. (Tr. 81–82, 168) Wilson candidly admitted that he did not know what use was being made of these letters. (Tr. 261) Petersen testified that the "Wilson" letters were drafted to comply with § 1.5 of the Justice Department's Manual for Conduct of Electronic Surveillance Under Title III of Public Law 90–351, portions of which were received into evidence. Section 1.5 provides as follows:

"1.5 *Manner in which authorization will be given.*

A letter over the signature of the Attorney General or of the specially designated Assistant Attorney General will authorize the person named in the request for authorization . . . to apply for the interception order. The applicant should usually be the supervising attorney, and when it is requested that an agent rather than the attorney make the application, the reasons for that request should be specifically set out." (Defendants' Exhibit 13).

Both Mr. Earle and the undersigned accepted the letter and the facts as stated

therein as being true, and that Wilson had, in fact, been specially designated by Mitchell, and that Wilson had *personally* made the discretionary review and decisions as required by Title III, which led up to the application of June 17, 1969 by Mr. Earle.

Mr. Earle presented the "Wilson" letter together with the sworn application, the special agent's affidavit, and a proposed interception order, all of which were prepared by the Justice Department, to the undersigned on June 17, 1969. The sworn application also contained the now repudiated recital of Wilson's authorization decision via a special designation from Mitchell to exercise the § 2516 powers. Mr. Earle's application stated, *inter alia*:

> "The Attorney General of the United States has *specially designated* in this proceeding, the Assistant Attorney General for the Criminal Division to exercise the powers conferred on him by Section 2516 of Title 18, and the Assistant Attorney General of the Criminal Division has in turn authorized the affiant to make this application for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A." (Emphasis added)

If the testimony on March 19, 1973 before this Court by Mitchell, Wilson and Petersen is to be believed, then all of the quoted portions of documents presented to and relied upon by the undersigned on June 17, 1969 describing the authorization of the application for the Wire Interception Order issued by the undersigned on that date are patently untrue. Everyone connected with this case now knows that Will Wilson had nothing whatsoever to do with the application for the wiretaps which led to the defendants' conviction in Case No. 70–143–CR–WM and to the outstanding indictments in the other cases. For over two years, at least until the revelations in the *Robinson* case [3] brought every wiretap application and order in this district and across the country under suspicion, these 'defendants and this Court were deceived as to the actual procedures employed by the United States Department of Justice in procuring wiretap orders from the federal courts. In the record of these cases, it was not until April, 1972 that copies of an affidavit of former Attorney General Mitchell were filed in the United States Court of Appeals in case No. 71–2948 [4] on April 14, 1972, and in this Court in the four pending cases on April 11, 1972. In that affidavit it was first admitted by the Government that Attorney General Mitchell had actually exercised the power to initiate a wiretap upon the telephones used by the defendants. Such an admission is required by the clear language of Title III to be contained in both the sworn application 18 U.S.C. § 2518(1)(a) [5] and in the Court order authorizing interception.[6] That failure by the Government to reveal in its application to this Court the name of the individual who had in fact exercised the Title III authority, compounded by its misleading effect upon the Court's interception order, requires the suppres-

3. *Supra*, note 1.

4. That case, which is this Court's No. 70–143–CR–WM, was then on appeal. It was thereafter remanded to this Court. See note 1, *supra*.

5. "(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;"
18 U.S.C. § 2518(1)(a)

6. "(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

\*   \*   \*   \*   \*

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application;"
18 U.S.C. § 2518(4)(d)

sion of the evidence derived from the interceptions of the defendants' telephone conversations. United States v. Chavez, 478 F.2d 512, No. 72–2240 (9th Cir., 1973), cert. granted, 412 U.S. 905, 93 S. Ct. 2292, 36 L.Ed.2d 969 (1973); United States v. Focarile, 340 F.Supp. 1033 (D. Md.1972), aff'd sub nom. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972). *Contra,* United States v. Ceraso, 467 F.2d 647 (3rd Cir. 1972); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Becker, 461 F. 2d 230 (2nd Cir. 1972); United States v. Pisacano, 459 F.2d 259 (2nd Cir. 1972); United States v. Vigi, 350 F. Supp. 1008 (E.D.Mich.1972); United States v. Cantor, 345 F.Supp. 1352 (E. D.Pa.1972); United States v. Mainello, 345 F.Supp. 863 (E.D.N.Y.1972); United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972); United States v. Consiglio, 342 F.Supp. 556 (D.Conn.1972); United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga.1972).

With due respect to those courts which have found that the requirements of § 2518 were either substantially complied with or that any violation thereof was harmless error, it must be noted that none of those decisions was based upon the live testimony of those individuals who either apparently or actually participated in the authorization procedures. Those decisions were based in large part upon a series of after-the-fact affidavits submitted by past and present Justice Department officials on behalf of the Government. Affidavits are often more significant for what they fail to contain, rather than for the averments and legal conclusions contained therein. Those affidavits, for example, caused the Third Circuit in *Ceraso, supra,* to conclude that:

"A fair reading of both documents show that *both the Attorney General and the Assistant Attorney General share personal responsibility for this authorization.*" 467 F.2d at 652 (Emphasis added)

In view of the testimony before this Court, it is clear that whenever Wilson's name was signed by either Petersen or Harold Shapiro (the Deputy Assistant Attorney General who signed the "Wilson" letter in *Ceraso*) it represented no personal responsibility or any firsthand knowledge by Wilson, but was rather the institutional decision and responsibility of the Criminal Division.

In United States v. Vigi, 350 F.Supp. 1008 (E.D.Mich.1972), the District Court, on the basis of after-the-fact affidavits by Mitchell and Petersen, found that Petersen, who was at that time the *Acting* Assistant Attorney General (he had been nominated to become Wilson's successor), was "specially designated" by Mitchell to authorize the application in that case under § 2516. The Court concluded that it was clear in that case

". . . that the Attorney General as well as the specially designated Assistant Attorney General authorized the application. The designated assistant attorney general was identified in the order. A *proper person was identified* in the authorization to seek the application as well as in the order itself." *Id.* at 1010.

The Court cited *Ceraso* as authority for overruling the defendants' challenge to the wiretap authorization procedures based upon the government's failure to comply with § 2518(1)(a) and (4)(d). From the testimony adduced at this Court's hearing it is clear that neither Wilson nor Petersen as his successor was *ever* "specially designated" by Mitchell within the latter's interpretation of § 2516.

In United States v. Pisacano, 459 F.2d 259 (2nd Cir. 1972), the Court held that an authorization by Sol Lindenbaum, Mitchell's Executive Assistant, and a "Wilson" letter signed by Petersen were "very likely consistent with the mandate of § 2516(1)." *Contra,* United States v. Robinson, *supra* note 1. In light of that conclusion, the Second Circuit

"would not be inclined to rule that the authorizations were nevertheless invalid in light of 28 [*sic*] U.S.C. § 2518(1)(a) & (4)(d). . . While

Will Wilson was identified as the authorizing officer when in fact the Attorney General or Mr. Lindenbaum had approved the applications, this discrepancy did not meaningfully subvert the congressional scheme [of fixed responsibility]." 459 F.2d at 264 n.5.

That Court in United States v. Becker, 461 F.2d 230 (2nd Cir. 1972), and bound by the *Pisacano* decision, concluded:

"Although the application to the court erroneously stated that it had been authorized by Wilson rather than by the Attorney General himself, we consider to be harmless error, [citing United States v. Consiglio, 342 F. Supp. 556 (D.Conn.1972)]" 461 F.2d at 235.

The Eighth Circuit in United States v. Cox, 462 F.2d 1293 (8th Cir. 1972), and the District Court in United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga. 1972), both found it "irrelevant" that the application and court order listed the authorizing officer as Wilson rather than Mitchell. The District Court in United States v. Consiglio, 342 F.Supp. 556 (D.Conn.1972), concluded that "the Department of Justice [by failing to name the correct authorizing official] did not effect a material fraud upon this Court." *Id.* at 560 n. 6, citing *Pisacano.*

The most thorough discussion of the identification requirement of § 2518(1)(a) and (4)(d) is found in Judge Miller's opinion in United States v. Focarile, 340 F.Supp. 1033 (D.Md. 1972), aff'd sub nom. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972). Judge Miller reviewed the Congressional history and source of the identification requirement and concluded that both a proper authorization within the specific terms of § 2516(1) and the correct identification of that person under § 2518 were necessary to comport with the Congressional scheme *to fix responsibility* for the act of authorization of the application *in a specific individual* who is subject to the political process.

"If the only important fact were that one of the persons given the power to act by § 2516(1) had in fact authorized the application, it would not have been necessary to add the additional provisions of § 2518 to require the identity of the acting official to be set forth in the application and order." 340 F.Supp. at 1057.

In Judge Miller's view, misidentification of the individual who authorized the application would be no more a technicality than would be a total failure to identify anyone, either of which would require suppression. *Id.* at 1060. The Court finds Judge Miller's reasoning to be persuasive. *See also* United States v. Chavez, 478 F.2d 512, No. 72–2240 (9th Cir., 1973).

In this Court's view the statutory framework is clear. Section 2516(1) allows only the Attorney General or one of the nine Assistant Attorneys General specially designated by the Attorney General for that purpose to authorize a Title III application. Section 2518(1)(a) requires that the individual who in fact personally authorizes the application be identified in that application. Section 2518(4)(d) requires that authorizing individual to be identified in the Court's order. Until the Court was made aware of how the Department of Justice devised its own intricate procedures which included, *inter alia,* ghost-written letters and patently false and misleading memoranda, it was inconceivable that the framework as set out by the express language of Title III could not be strictly and carefully followed by the highest legal officers in our nation. It was not followed, however, in the instant cases.

It is incredible that attorneys, officers of the Court, officials of the federal government, could have prepared an inter-related series of documents expressly drafted for presentation to federal judges in support of requests for wiretap orders that contained recitations of statutory designation and authorization that we are now told were never in fact operative. The Ninth Circuit Court of Appeals in United States v. Chavez, 478

F.2d 512, No. 72–2240 (9th Cir., 1973), stated:

"[W]e can see no rational explanation for the elaborate paper charade of the Mitchell memorandum, the Wilson letter, and the [field attorney's] application, unless it be to deceive the Congress and the court. That it did deceive the Judge, we have no doubt." 478 F.2d at 515.

The Ninth Circuit probably did not poll its district judges in reaching that conclusion. That would have been an unnecessary act.

The single wiretap order from which these cases arise was signed on June 17, 1969 by the undersigned and was the first Title III order ever issued by a United States District Judge. There was no reason to doubt what was then the clear and obvious import of the words

"The Attorney General of the United States has specially designated in this proceeding the Assistant Attorney General for the Criminal Division to exercise the powers conferred on him by Section 2516 of Title 18, and the Assistant Attorney General of the Criminal Division has in turn authorized the affiant to make this application . . ."

that were contained in the government's application for an interception order. The Court relied on Will Wilson's letter as *the* authority for the application. The Court accepted as a true fact that the signature on Wilson's letter to Mr. Earle was signed thereon by Wilson. There was no reason at that time to doubt the truthfulness or the accuracy of what was then obvious to the Court, and obvious to Mr. Earle as well. But now, after having heard the former Attorney General of the United States testify under oath that *he* made the authorization decision in this case and that Wilson was *never* designated by him to make such authorizations, and after having heard Wilson and Petersen testify as to how the Justice Department interpreted the language and intent of the documents presented to this Court, this

Court is compelled to suppress the wiretap evidence in this case.

The Ninth Circuit in *Chavez,* in response to the government's contentions that the identification requirements were merely technicalities (despite the decisions supporting the government's position), stated:

"To [wave away the identification provisions] in this case would be to countenance an apparently deliberate deception of the courts by the highest law officers in the land. The Supreme Court, the Courts of Appeals and the District Courts have traditionally relied upon the integrity of representations made to them by such officers. If we were to uphold what they did here, the door would be open to similar behavior in other cases, and the trust of the courts in the Attorney General and his Assistant Attorneys General, so vital to the efficient and effective conduct of judicial business, would soon be destroyed." 478 F.2d at 517.

In view of the foregoing findings of fact and conclusions of law, it is

Ordered and adjudged that the evidence obtained pursuant to the interception order of June 17, 1969 be and the same hereby is suppressed.