**UNITED STATES of America, Appellant,**

v.

**Anthony M. ST. LAURENT et al., Defendants-Appellees.**

**No. 75-1091.**

United States Court of Appeals, First Circuit.

Argued June 3, 1975.

Decided Aug. 22, 1975.

Certiorari Denied Jan. 12, 1976. See 96 S.Ct. 775.

---

1. By noting this, we do not mean to pass on what the legal effect of an opposite conclusion would be.

Reuben H. Wallace, Jr., Atty., Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., and John R. Tarrant, Sp. Atty., Dept. of Justice, Boston, Mass., were on brief, for appellant.

Morris M. Goldings, Boston, Mass., with whom Mahoney, Atwood & Goldings, Boston, Mass., was on brief, for Arthur Venios, appellee.

Martin G. Weinberg, Jeffrey J. Binder, and Crane, Inker & Oteri, Boston, Mass., on brief for Anthony M. St. Laurent and William H. Burbidge, defendants-appellees.

Charlotte Anne Perretta and Keating, Perretta & Pierce, Boston, Mass., on brief for Gary Wall, appellee.

Melvin S. Louison, Brockton, Mass. (joining in the brief for appellee, Arthur Venios), for William Duarte, appellee.

Joseph J. Balliro, Boston, Mass. (joining in the brief for appellee, Arthur Venios), for Joseph Badway, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

**508**

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal by the Government from the granting of a motion to suppress evidence obtained from wiretaps, see 18 U.S.C. § 2518(10)(a).* The background situation is like that in *United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1973). The court orders authorizing the wiretaps were based on a form letter purportedly but not actually from Assistant Attorney General Will Wilson, *id.* at 566. After indictments were returned, the Government filed affidavits conceding that Will Wilson had neither signed the letter nor made the judgment to seek wiretap authority. However, Sol Lindenbaum, the Attorney General's Executive Assistant, stated that Attorney General John N. Mitchell, by personally initialled memoranda, had himself authorized the taps in question. A copy of the Attorney General's purported authorizing memorandum was tendered with the Lindenbaum affidavit. The described routines were in all essentials like those recounted in *Chavez*.

The question on this appeal is simply the district court's authority to refuse to accept the Government's affidavits, there being no question that if the underlying facts were as therein represented, the Government would be entitled to prevail under *Chavez*.

In granting the suppression motion, the district court reflected awareness of the Supreme Court's decision in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1973), and, we may assume, of the companion case, *Chavez* itself. The district court emphasized in open court that its ruling was based on a lack of satisfaction

"that the Government has carried the burden of proving by clear evidence that there was a proper authorization by any of the officials specified in the statute. . . .

. . . My decision is not an issue of or a question of law, it is a factual decision. I am not satisfied on the evidence as a matter of fact. I want that to be clear."

Therefore what is now relevant is not the ancient history of the mismanaged Will Wiison authorizations—all set forth at length in *Chavez* and *Giordano*—but simply whether the district court abused its discretion in rejecting the Government's affidavits so hastily. To put the court's action in perspective, we shall briefly sketch the history of this issue in the case.

The Will Wilson imbroglio, together with the disclosure that the Attorney General himself had purportedly authorized the very same wiretap in a hand-initialled memorandum, first emerged in affidavits of Acting Assistant Attorney General Henry Peterson and Sol Lindenbaum dated November 23, 1971. These included Lindenbaum's assertion,

"On July 16, 1970, the Attorney General approved a request for authority to apply for an interception order in this case. Attached is a copy of his personally initialed memorandum of that date to Will Wilson, the Assistant Attorney General in charge of the Criminal Division, specially designating him to authorize Edward F. Harrington to apply for an interception order in this matter."

The memorandum, on government stationery, and bearing Mitchell's typewritten name and title, bore the handwritten initials "JNM".

On February 14, 1973, the sufficiency of these affidavits was challenged at a hearing before the district judge then handling the case (who was not the judge who later presided at the suppression proceedings). Defendants had moved to dismiss the indictments for, among other things, the false Will Wilson authorization. The judge stated that more specific evidence of proper authorization was called for, suggesting that an affidavit from Mitchell himself might be in order, and in any event that Lindenbaum's affidavit as worded was too

---

* We postpone until later our discussion of appellees' contention, which we reject, that the appeal was untimely.

sparse. He gave the Government time to produce something better. Thereafter the Government filed further, more elaborate affidavits from Lindenbaum and Peterson which covered, in addition, certain other related taps. Lindenbaum's affidavit now included a paragraph explaining that in the course of his duties, which he said included routinely reviewing wiretap authorization requests and making recommendations to the Attorney General thereon, he "became familiar with the . . . actions taken by Attorney General Mitchell on such requests. Also in the course of such duties, I became familiar with Mr. Mitchell's signature and signed initials." Mr. Lindenbaum stated that attached copies of memoranda were "personally initialled" by the Attorney General and that Attorney General Mitchell had "approved the requests" on the dates specified. There was also submitted a copy of an affidavit of Mitchell's prepared for another proceeding confirming generally the office policies described by Peterson and Lindenbaum, but not stating that Mitchell personally had authorized any of the taps in this case.

On October 16, 1972, the district judge entered an order denying the motions to dismiss the indictment on the grounds of illegal wiretap authorizations. In the order, he specifically found,

> "After hearing, and upon consideration of all submitted affidavits [citing Fed. R.Crim.P. 12(b)(4), which authorizes affidavits], arguments of counsel, and pertinent legal authorities, the Court finds and rules that former Attorney General John N. Mitchell personally approved the disputed wiretap authorizations in this case in conformity with 18 U.S.C. § 2516(1)."

Thereafter, the docket reflects that on April 5, 1973, the court stayed a hearing on motions to suppress on the issue of authorization pending the outcome of the *Giordano* case and also granted at least one of the defendants' motions for reconsideration of the court's action on the motions to dismiss. While this subsequent action lessens the impact of the court's earlier ruling on the motions to dismiss, it does not show that the prior judge was necessarily retreating from his factual finding that Mitchell had personally approved the authorizations. Rather the decision seems to have been made to await the Supreme Court's resolution of the controlling legal issues.

The next relevant hearing was the one from which this appeal was taken, on December 18, 1974. It was prefaced by motions of defendants questioning the accuracy of the Lindenbaum affidavits and pointing out, citing *Giordano,* that Lindenbaum had conceded on occasion placing Mitchell's initials on memoranda. Counsel said it was their intention to inquire deeply into whether Mitchell himself and not Lindenbaum had authorized the taps. At the December 18 hearing, the court asked the Government what it intended to do "other than what is in the file" to satisfy its burden of establishing authorization by "clear" evidence. When the attorney for the Government replied "nothing," the court allowed the motions to suppress, stating that Mr. Lindenbaum was not an "expert on handwriting, nor do I think mere office familiarity is enough . . . I am not going to accept his affidavit." The court mentioned that in other cases "we have had a specific affidavit from Mr. Mitchell with respect to particular authorization."

On January 20, 1975, the Government moved for reconsideration, this time presenting an affidavit from former Attorney General Mitchell stating unequivocally that the memoranda and initials were his own, and that he had authorized the particular wiretaps. This affidavit was in all substantial respects the same as the affidavit filed by Mitchell in *Chavez, see* 478 F.2d 512, 514 (9th Cir. 1973), just as was Lindenbaum's earlier affidavit, *id.* at 513–14 (except, of course, the documents described the particulars of different wiretaps). The court denied the motion, stating,

> "I do not accept Mr. Mitchell's affidavit made so long after the event and

in Mr. Mitchell's present circumstances. It is too little and too late. . ."

■ We are of the opinion that the district court moved somewhat too peremptorily. We do not question its authority to insist upon adequate and clear proof by the Government, and we recognize that different judges, within reasonable limits, may want more or less evidence to satisfy themselves. Thus at the December 18 hearing, we think the court could have demanded an affidavit from Mitchell and announced its intention to suppress if one was not provided forthwith. Still it must be recognized that a previous judge had found the Lindenbaum-Peterson documents to be sufficient by themselves to show authorization by Mitchell, and in several cases, courts have accepted Lindenbaum's and Peterson's affidavits, standing alone and without Mitchell's further affidavit, as adequate. *See United States v. Quintana,* 508 F.2d 867 (7th Cir. 1975); *United States v. Brick,* 502 F.2d 219 (8th Cir. 1974). Under the circumstances, we do not think the Government acted unreasonably in relying on the affidavits then available. The government attorney, it is true, did not offer to procure anything else when questioned by the judge; still the tortuous history of the case and of the national calamity which affected it doubtless made it difficult for the government attorney to assure that verification from Mitchell himself would be forthcoming, as well as to predict what quantum of proof a given judge might require.

Nonetheless, had the Government offered nothing further after the December 18 ruling we might well have accepted the ruling as within the court's discretion. The court might have construed the lack of a Mitchell affidavit at a time when such affidavits had been furnished in other cases as indicative that Mitchell could not personally vouch for these particular transactions. When his affidavit was tendered, however, this largely allayed doubts on that score, and we think the court should have reopened the proceeding.

■ Normally, of course, district courts have wide latitude to refuse reconsideration. But this was a unique situation where those immediately responsible for the Government's case cannot be said to have been derelict in their preparation. Another judge had earlier accepted the affidavits as probative of Mitchell's authority. His action was not binding, but it at least justified the Government in believing that it had met the threshold requirements for "clear" evidence. If more was desired, it was entitled to be told and to have a reasonable opportunity to produce it.

We do not go quite so far as Judge Bright, concurring in *United States v. Brick, supra,* at 227, who said,

"I read *Chavez* as construing the existence of the Attorney General's initials on form memoranda to Will Wilson and the subsequent affidavits of Sol Lindenbaum or Mitchell himself stating that those initials signified approval for the authorization to be sufficient to establish the wiretap authority, without more."

But certainly after *Chavez,* affidavits by *both* Lindenbaum and Mitchell, identical to those in *Chavez,* would normally be sufficient on their face unless defendants had come forward with evidence casting doubt on their veracity. *See, e. g., United States v. Doolittle,* 507 F.2d 1368, 1371 (5th Cir. 1975); *United States v. Quintana,* 508 F.2d 867, 870–72 (7th Cir. 1975); *United States v. Ramsey,* 503 F.2d 1200, 1202–03 (7th Cir. 1975). If, as here, the district court found such affidavits insufficient in view of the circumstances of the case, the court might require more from the Government. For instance, the court might insist that the Government furnish particulars, such as whether Mitchell was at his office on the dates in question or how Mitchell could remember this particular authorization after so long, or might even require an evidentiary hearing on some issues. But here the affidavits were not only rejected out of hand, but the Government was given no opportunity to establish its position by producing further support that Mitchell authorized the wiretaps, because

in advance of the court's ruling it had no reason to expect that more than what it presented was necessary. If courts could peremptorily reject normally adequate affidavits in this area, the Government would face an intolerable burden in having to surmise the degree of verification required for each case and each judge. Of course, the Government would not be entitled to a second chance if it were to delay or not produce initially what would ordinarily be known to be necessary. But this does not appear.

██ We accordingly vacate the order granting the motion to suppress and remand for further proceedings consistent herewith. The Government may provide further affidavits and other evidence as to Mitchell's authorization, and defendants may pursue their attacks on it to the extent the court finds reasonable. We would add that the court has extensive discretion in handling such preliminary motions to proceed by affidavit or to receive other evidence, and absent a clear abuse of discretion its determination of what limitations to impose on the type and amount of evidence will not be upset. *See* Fed.R.Crim.P. 12(b)(4). The court may then rule anew on the suppression motion in light of all the evidence.

Defendants contend that the appeal was untimely. *See* Fed.R.App.P. 4(b). The district court announced orally on December 18, 1974, "I will allow the motion to suppress . . ." and, later, "I will enter an order today allowing all of the motions to suppress . . ." The docket entry for December 18 reflects

"SKINNER, J. Case called for hearing on pending motions; arguments by counsel; motions for each defendant to suppress evidence, ALLOWED."

However, on December 19 the judge himself endorsed the following order on the suppression hearing transcript,

"All of the motions in the above entitled cases to suppress the evidence of wiretaps are ALLOWED. The foregoing transcript of the hearing shall constitute my memorandum of findings

and rulings and shall be filed in each case."

The docket for December 20 reflects that the transcript with the judge's order endorsed thereon was filed December 20, 1974.

██ We agree with the Government that the court's "order," *see* 18 U.S.C. § 2518(10)(b), or "decision, judgment or order," *see* 18 U.S.C. § 3731, tolling the appeal period was later than December 18. We need not decide whether the date was the nineteenth, when Judge Skinner actually made it, or the twentieth when the endorsed transcript, which was to serve as his Memorandum of Findings and Rulings, was filed. Where, as here, a judge enters a formal order within the appeal period, the date of the order is, for appeal purposes, presumptively controlling over a previous oral indication. *United States v. Lee,* 501 F.2d 890, 891, n. 1 (D.C.Cir.1974); *see United States v. Hark,* 320 U.S. 531, 535, 64 S.Ct. 359, 88 L.Ed. 290 (1944). In the present case, the judge said that he intended to enter an order, and while he spoke of doing so on the eighteenth he did not get around to drafting it until the nineteenth. The more formal action controls.

Taking the nineteenth as the date, the 30-day appeal period, *see* 18 U.S.C. §§ 2518(10)(b), 3731, would run through Monday, January 20, the actual thirty day period having expired on the Saturday preceding. Fed.R.Crim.P. 44(a). On that date, the Government filed its motion for reconsideration, which was denied the same day. Appeal from denial of the motion for reconsideration was filed within 30 days, on February 19, 1975.

Appellees contend that this rather breathless procedure did not get the Government under the wire. We think it did. *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). The time provisions are, of course, mandatory and would require dismissal if not met; but the court held in *Healy* that where the Government in a criminal case had filed a petition for rehearing within

the appeal period following dismissal of an indictment, the 30 days ran from the date of the denial of the petition for rehearing. Appellees urge various reasons for distinguishing *Healy*, none of which seem to us significant. It was sound procedure for the Government to approach the district judge first with the Mitchell affidavit, since it was entirely possible that the affidavit would obviate any need for an appeal. *See id.* at 80, 84 S.Ct. 553. The Rules require the Government to certify that its appeal is not for purposes of delay, and to prosecute diligently, and abuse of these procedures for purposes of delay can be readily controlled by the court. The distinction between a question of fact and a question of law, if indeed such can be made here, is of no significance that we can perceive in this situation.

*Vacated and remanded for proceedings in conformity herewith.*