**The UNITED STATES**

v.

**Joe Dean STANLEY et al.**

**Crim. No. 27541.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 13, 1973.

J. Robert Sparks, Atlanta, Ga., for plaintiff.

Wesley Asinof, Charles R. Smith, H. A. Stephens, Jr., Atlanta, Ga., for all defendants except Wilson and Fletcher.

John Nuckolls, Atlanta, Ga., for defendant Willie Cephus Wilson.

Tyrus Atkinson, Atlanta, Ga., for defendant Annie Fletcher.

## ORDER

EDENFIELD, District Judge.

This case represents another segment in the continuing saga of the Government's gross carelessness in the processing of wiretap applications under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (1970) ["Title III"]. The issue before the court is whether the misidentification in an application for a wiretap order and in the order itself of the person who authorized the application requires suppression of the fruits of the wiretap. At least five circuits [1]

---

[1] United States v. Bobo, 477 F.2d 974 (4th Cir. 1973); United States v. Chavez, 478 F.2d 512 (9th Cir. 1973); United States v. Ceraso, 467 F.2d 647 (3d Cir. 1972); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972); United States v. Becker, 461 F.2d 230 (2d Cir. 1972).

have dealt with this issue, and only one, the Ninth,[2] has required suppression. This court agrees with the Ninth Circuit.

The pertinent facts, as the court finds them,[3] are the following. Sometime in the Fall of 1971, J. Robert Sparks, an attorney in the Criminal Division of the United States Department of Justice in Atlanta, Georgia, requested authorization from the Department to apply to a federal judge for a wiretap order to intercept communications among the defendants. The request was reviewed by attorneys in the Division and by Henry E. Petersen, who was then Acting Assistant Attorney General of the Criminal Division, all of whom favored its approval. The request was forwarded to John N. Mitchell, then the Attorney General, who initialed[4] a memorandum dated November 23, 1971, and directed to Petersen, the subject title of which is "Interception Order Authorization" and which states in part:

"This is with regard to your recommendation that authorization be given to J. Robert Sparks of the Criminal Division to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications . . . in connection with the investigation into possible violations of Title 18, United States Code, Sections 1955 and 371 by Joe Dean Stanley . . . .

"Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby *specially designated* to exercise those powers for the purpose of authorizing J. Robert Sparks to make the above-described application." (Emphasis added).

Under 18 U.S.C. § 2516 "the Attorney General, or any Assistant Attorney General *specially designated* by the Attorney General, may authorize an application to a Federal judge" (emphasis added) for a wiretap order. Mitchell's memorandum is ambiguous because it can be read to mean that Mitchell made the authorization decision, or it can be read in light of the use of the "specially designated" terminology of § 2516 to mean that Mitchell delegated the authorization decision to Petersen. However, Mitchell avers in a sworn affidavit dated November 20, 1972, and filed in this case November 30, 1972, that he made the authorization decision himself in this case.

2. United States v. Chavez, 478 F.2d 512 (9th Cir. 1973).

3. In what follows the court will determine the meaning of several memoranda, letters, and other papers, some of which were submitted to this court prior to the issuance of wiretap orders in this case. The court's findings of fact will be based on "after the fact" affidavits submitted by or taken from the officials of the Justice Department involved in the case. The court has grave misgivings about the propriety of basing its findings upon such "after the fact" material, and had it been left to its own devices, it might well have agreed with Judge Merhige in United States v. Boone, 348 F.Supp. 168, 170 (E.D.Va.1972) that the relevant documents must be viewed as of the time of their presentation to the courts and not in light of "after the fact" evidence. Indeed, defendants have moved to strike certain portions of an affidavit of John N. Mitchell which was filed by the Government in support of its position concerning documents submitted to the court a year earlier.

However, the court finds itself bound by the pronouncements of the Fifth Circuit in the en banc decision in United States v. Robinson, 472 F.2d 973 (5th Cir. 1973), for there the Fifth Circuit ordered Judge Mehrtens to hold an evidentiary hearing to determine the true facts surrounding a wiretap application procedure—an evidentiary hearing bound to consist of "after the fact" evidence. *See also* United States v. Upshaw, 448 F.2d 1218 (5th Cir. 1971), cert. denied, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972).

Accordingly, the court will base its findings on the "after the fact" evidence and will deny defendants' motion to strike.

4. Unlike the *Robinson* case and other similar cases there is no dispute here as to whether John N. Mitchell placed his own initials on the memoranda attributed to him.

This is corroborated by the sworn affidavit of Petersen dated November 22, 1972, and filed in this case November 30, 1972. Accordingly, notwithstanding the ambiguous and misleading memorandum, the court finds as fact, on the basis of Mitchell's and Petersen's affidavits, that Mitchell himself, through the medium of the memorandum of November 23, 1971, authorized Sparks to apply for a wiretap order.

On November 24, 1971, Petersen signed and sent a letter to Sparks which states in part:

"This is with regard to your request for authorization to make application . . . for an Order of the Court authorizing the Federal Bureau of Investigation to intercept wire communications . . . .

"Your request and the facts and circumstances detailed therein have been reviewed and it has been determined that probable cause exists to believe that Joe Dean Stanley, Hudson Ashley, . . . and others as yet unknown have committed, are committing, or are about to commit offenses enumerated in Section 2516 of Title 18, United States Code. It has further been determined that there exists probable cause to believe that the above persons make use of the described facilities in connection with those offenses, that wire communications concerning the offenses will be intercepted, and that normal investigative procedures reasonably appear to be unlikely to succeed if tried.

"Accordingly, you are hereby authorized under the power specially delegated to me in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the power conferred on him by Section 2516 of Title 18, United States Code, to make application to a judge of competent jurisdiction for an Order of the Court pursuant to Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Investigation to intercept wire communications to and from the facilities described above, for a period of fifteen (15) days."

This letter is misleading in that it suggests that the Attorney General had delegated the authorization decision to Petersen when, in fact, that decision had been made by the Attorney General himself.

Relying on the Petersen letter, Sparks applied to me for a wiretap order. His application states in part:

"Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has specially designated in this proceeding the Acting Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Henry E. Petersen, to authorize Affiant to make this application for an Order authorizing the interception of wire communications. The letter of authorization signed by the Acting Assistant Attorney General is attached to this application as Exhibit A."

The only documents attached to the application were "Exhibit A"—the letter from Petersen—and "Exhibit B"—the affidavit of the special agent who investigated defendants' activities. The Mitchell memorandum was not attached to the application or referred to in it.

The quoted portion of Sparks' application was presented to me in order to satisfy 18 U.S.C. § 2518(1)(a), which provides that every application for a wiretap order must include "the identity of . . . the officer authorizing the application." Sparks' application creates the unmistakable impression that the Acting Assistant Attorney General actually authorized the application, although it does not specifically so state. The application does not state that the Attorney General authorized the application. Accordingly, the court finds as fact that Sparks' application does not identify the Attorney General as the officer who authorized the application.

On November 24, 1971, I issued orders which had been prepared for my signature by Sparks which allowed the wiretaps to proceed and which state in part:

> "Special Agents of the Federal Bureau of Investigation, United States Department of Justice, are authorized, *pursuant to the application, authorized by the Acting Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Henry E. Petersen,* who has been specially designated in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, to exercise the powers conferred on the Attorney General by Section 2516 of Title 18, United States Code, to:
>
> "(a) intercept wire communications . . .." (Emphasis added).

The quoted portion of my orders was included in those orders to satisfy § 2518(4)(d), which provides that "[e]ach order authorizing or approving the interception of any wire or oral communication shall specify . . . the identity of the agency authorized to intercept the communications, and of the person authorizing the application . . .." The court finds that the emphasized portion of its orders is false because it identifies the Acting Assistant Attorney General for the Criminal Division of the United States Department of Justice [5] as the person who authorized the application when, in fact, the Attorney General authorized the application. The orders do not identify the Attorney General as the person who authorized the application. The court also finds that the unmistakable impression created by Sparks' application to the court was the cause of the falsity of the emphasized portion of the orders.

After the initial wiretapping began Sparks requested authorization for an extension application. The request was forwarded to Mitchell, who initialed a memorandum dated December 9, 1971, which was in pertinent part identical to the memorandum of November 23, 1971, and which was ambiguous in that it could be read to mean that Mitchell made the authorization decision himself or that he delegated that decision to the Acting Assistant Attorney General Petersen. However, Mitchell avers in a sworn affidavit dated November 20, 1972, and filed in this case November 30, 1972, that he made the authorization decision himself. This is corroborated by the sworn affidavit of Petersen dated November 22, 1972, and filed in this case November 30, 1972. Accordingly, notwithstanding the ambiguous and misleading memorandum, the court finds as fact, on the basis of Mitchell's and Petersen's affidavits, that Mitchell himself, through the medium of the memorandum of December 9, 1971, authorized Sparks to apply for the extension order.

On the strength of the Mitchell memorandum Petersen sent a letter dated December 9, 1971, to Sparks which in pertinent part is identical to his letter of November 24, 1971, and which is misleading in that it, too, suggests that the Attorney General had delegated the authorization decision to Petersen when, in fact, that decision had been made by the Attorney General himself.

Relying on Petersen's letter, Sparks applied to me for an extension of the first wiretap order. The Petersen letter was attached to the application as "Exhibit F," but the Mitchell memorandum was not attached to or referred to in the application. This application in pertinent part is identical to the first application, and it, too, creates the unmistak-

---

5. Had this court not considered the "after the fact" affidavits in this case, it would have found as fact that the authorization decision had been delegated to and made by the Acting Assistant Attorney General, and it would have concluded as a matter of law, as did Judge Merhige in United States v. Boone, 348 F.Supp. 168 (E.D.Va.1972), that such authorization was not in conformity with 18 U.S.C. § 2516 because there is no provision in that statute for authorization by an Acting Assistant Attorney General.

**1116**

able impression that the Acting Assistant Attorney General authorized it although it does not so specifically state. This second application does not state that the Attorney General authorized it. Accordingly, the court finds that the second application does not identify the Attorney General as the officer who authorized it.

On December 9, 1971, I issued orders which had been prepared for my signature by Sparks which approved the requested extension. The pertinent parts of those orders are identical to the orders of November 24, 1971, and repeat the statement that Sparks' extension application had been "authorized by the Acting Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Henry E. Petersen." The court finds that this portion of its orders of December 9, 1971, is false because it identifies the Acting Assistant Attorney General for the Criminal Division of the United States Department of Justice as the person who authorized the application when, in fact, the Attorney General authorized the application. The orders do not identify the Attorney General as the person who authorized the extension application. The court also finds that the unmistakable impression created by Sparks' extension application to the court was the cause of the falsity in the orders.

Defendants move to suppress the contents of the communications intercepted and all evidence therefrom.

Summarizing the relevant facts, the court finds that:

(1) John N. Mitchell, Attorney General of the United States at the time, authorized the applications for wiretap orders in this case.

(2) The applications for wiretap orders presented to me in this case do not identify John N. Mitchell, Attorney General of the United States at the time, as the official who authorized the applications; and

(3) The orders issued by me approving the wiretaps in this case do not identify John N. Mitchell, Attorney General of the United States at the time, as the person who authorized the applications for those orders.

■ On the basis of these findings of fact the court concludes, as a matter of law, that the applications for wiretap orders in this case did not comply with the requirements of 18 U.S.C. § 2518(1)(a) because they failed to include the identity of the officer who in fact authorized them, and that the orders issued by me approving the wiretaps in this case did not comply with the requirements of 18 U.S.C. § 2518(4)(d) because they similarly failed to specify the identity of the person who authorized the applications for those wiretaps.

■ Furthermore, the court concludes, as a matter of law, that the orders issued by me now can be seen to lack a statutory foundation. This is so for two reasons. First, as the court has already noted, each application for a wiretap order must, under 18 U.S.C. § 2518(1), contain certain specified information, including the identity of the officer authorizing the application. Under 18 U.S.C. § 2518(3) a judge may issue a wiretap order only "upon *such* application" (emphasis added)—that is, as this court understands it, an application which contains all the information specified in 18 U.S.C. § 2518(1). In this case, however, orders were issued upon applications which did *not* contain some of the specified information. Second, under 18 U.S.C. § 2516(1), a federal judge "may grant *in conformity with section 2518 of this chapter* an order authorizing or approving the interception of wire or oral communications . . . ." (Emphasis added). The court interprets this to mean that while a federal judge has discretion whether to grant a wiretap order, if he decides to grant one, he must do so in conformity with 18 U.S.C. § 2518. In this case the orders were not issued in conformity with the requirement of 18 U.S.C. §

2518(4)(d) nor, for that matter, in conformity with 18 U.S.C. § 2518(3) as already shown.

It must be frankly pointed out that Title III does not appear to directly provide a statutory remedy for the noncompliance and misidentification which the court has described.[6] Nevertheless, under 18 U.S.C. § 2515,

> "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

In Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court declared that § 2515 creates an evidentiary prohibition wich was designed to secure compliance with the strict terms of Title III. The Court pointed out that legal wiretapping requires prior judicial approval, "an approval that may not be given except upon compliance with stringent conditions. 18 U.S.C. §§ 2516, 2518(1)–(8)." (Emphasis added). 408 U.S. at 46, 92 S.Ct. at 2360. Analyzing the legislative history of Title III, the Court stated that § 2515 is central to the statutory scheme and is the principal enforcement provision of Title III. 408 U.S. at 48–51, 92 S.Ct. 2357. Finally, the Court emphasized that § 2515 serves not only to protect the privacy of communications "but also to ensure that the courts do not become partners to illegal conduct: the evidentiary prohibition was enacted also 'to protect the integrity of court and administrative proceedings.'" 408 U.S. at 51, 92 S.Ct. at 2362. In the present case it is that very integrity of the court which has been abused by the false and misleading memoranda, letters, and applications of the Government.

In view of the court's conclusions that § 2518 was not complied with in this case and that the wiretap orders issued in this case can now be seen to lack a statutory foundation, the court must also conclude, pursuant to § 2515, that no part of the contents of the communications intercepted in this case and no evidence derived therefrom may be received in evidence.

The Government urges that this court follow the Second,[7] Third,[8] Fourth,[9] and Eighth[10] Circuits, all of which have refused to order suppression in circumstances similar to those which transpired in this case and two of which have described the misidentification and noncompliance with 18 U.S.C. § 2518 as "irrelevant"[11] or "harmless error."[12]

---

6. In United States v. Focarile, 340 F. Supp. 1033, 1060 (D.Md.), aff'd sub nom. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972), cert. granted, 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194 (1973), Judge Miller rested his alternative holding that the type of misidentification which occurred in the present case required suppression on § 2518 (10)(a)(ii) which provides that a motion to suppress may be granted if the wiretap order ". . . is insufficient on its face." Judge Miller pointed out that if a wiretap order did not mention at all the identity of the person who authorized the application, it would surely be "insufficient on its face," and he held that misidentfication is the same thing and should require the same re-

sult. Although this court finds Judge Miller's theory attractive, it believes that § 2515 offers a satisfactory basis for suppression in cases of misidentification.

7. United States v. Becker, 461 F.2d 230 (2d Cir. 1972).

8. United States v. Ceraso, 467 F.2d 647 (3d Cir. 1972).

9. United States v. Bobo, 477 F.2d 974 (4th Cir. 1973).

10. United States v. Cox, 462 F.2d 1293 (8th Cir. 1972).

11. Id. at 1300.

12. United States v. Becker, 461 F.2d 230, 235 (2d Cir. 1972).

The reasoning of these decisions,[13] to the extent this court grasps it, appears to be that § 2516(1) predominates over § 2518, and that once it is established that the proper person did, in fact, authorize the application for a wiretap order, the will of Congress has been satisfied, and any subsequent misidentification of that person, though it might technically constitute a violation of § 2518, would not warrant suppression. But if this is so, why did Congress bother at all to enact § 2518(1)(a) and § 2518(4)(d)? Surely those provisions were not made the law of the land so that they could be blatantly ignored without consequence. None of the decisions relied upon by the Government attempt to refute Judge Miller's careful analysis of the pertinent legislative history of § 2516 and § 2518 in United States v. Focarile, 340 F.Supp. 1033, 1056–1057 (D.Md.), aff'd sub nom. United States v. Giordano, 469 F.2d 522 (4th Cir. 1972), cert. granted, 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194 (1973), which shows that Congress recognized that § 2516 only dealt with the *fact* of authorization and that Congress enacted § 2518(1)(a) and § 2518(4)(d) because it believed it was equally important that the *identity* of the authorizing official be made known to the judge to whom the application would be made and to the public. Thus, if suppression is the appropriate consequence of a violation of § 2516(1), it should follow that suppression is the appropriate consequence of a violation of § 2518(1)(a) and § 2518(4)(d). This was the conclusion of the Ninth Circuit in United States v. Chavez, 478 F.2d 512 (9th Cir. 1973).

Suppression is not an unknown legal consequence of the type of misidentification involved in this case. Prior to its amendment in 1972, Rule 41(c), Fed.R. Crim.P., which deals with search warrants, required that all search warrants state the names of the persons whose affidavits had been taken in support thereof. Both the Fourth Circuit in King v. United States, 282 F.2d 398 (4th Cir. 1960), and the Seventh Circuit in United States ex rel. Pugh v. Pate, 401 F.2d 6 (7th Cir. 1968), have held that if the name of an affiant is misidentified on the search warrant, the search warrant is invalid and any evidence seized thereunder must be suppressed. *Accord,* United States v. Carignan, 286 F.Supp. 284 (D.Mass.1967). *But see* United States v. Averell, 296 F.Supp. 1004 (E. D.N.Y.1969). In *King* Judge Sobeloff, writing for the panel, pointed out that the identification requirement was important both for constitutional reasons under the Fourth Amendment and for

---

13. It is possible that the Fourth Circuit's decision in United States v. Bobo, 477 F.2d 974 (4th Cir. 1973) may be distinguishable from the other decisions. In *Bobo* the Fourth Circuit referred to its earlier decision in United States v. Giordano, 469 F.2d 522 (4th Cir. 1972), cert. granted, 411 U.S. 905, 93 S.Ct. 1530, 36 L.Ed.2d 194 (1973), in which it held that if neither the Attorney General nor any of the Assistant Attorneys General personally authorized a wiretap application the fruits of the wiretap must be suppressed, and quoted with approval the following words from *Giordano*: " 'Perhaps it can plausibly be argued that when an application is properly authorized and only the identity of the source is mistakenly transmitted to the judge, he would have authorized the wiretap had he known the real facts.' " At 985.

The *Bobo* panel went on to state: "In this case, unlike *Giordano*, the Attorney General personally initialed a memorandum approving the specific wiretap authorization here questioned. *The fact that Mitchell himself had approved the request was made known to the judge to whom the application was made.* (Appendix, Vol. I, Sec. IB.)." (Emphasis added). At 985.

Thus it may be that in *Bobo* the misidentification of the authorizing official in the written application was corrected orally before the wiretap order was entered. Since it is not clear from the *Bobo* opinion whether there was also a misidentification in the wiretap order itself, *compare* opinion at 984 *with* opinion at 985, it is possible that the factual situation in *Bobo* differs entirely from the factual situations in the other decisions and in the case now before this court.

purposes of focusing responsibility upon specific individuals. As Judge Miller noted in *Focarile*, the identification requirements of § 2518 are also important both to protect Title III against constitutional attack under the Fourth Amendment and to focus responsibility upon specific individuals. Just as the Fourth and Seventh Circuits did not find suppression an inappropriate remedy for noncompliance with old Rule 41(c), this court does not find suppression an inappropriate remedy for noncompliance with § 2518.

Since the court concludes that under § 2515 no part of the contents of the communications intercepted in the case now before the court and no evidence derived therefrom may be received in evidence, the motion to suppress must be granted.

For the foregoing reasons defendants' motion to strike the affidavit of John N. Mitchell is denied [14] and defendants' motion to suppress is granted.

It is so ordered.