**The UNITED STATES**

v.

**Martin SKLAROFF et al.**

**Crim. No. 26335.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 18, 1973.

J. Robert Sparks, Atlanta, Ga., for plaintiff.

James J. Hogan, Miami Beach, Fla., for defendants Sklaroff.

M. M. Armistead, Victoria D. Little, Decatur, Ga., for defendant Berry.

## OPINION AND ORDER

EDENFIELD, District Judge.

### OPINION

Defendants in the above-styled case were convicted by a jury on September 17, 1971, of violating federal gambling laws and were sentenced by this court on October 21, 1971, to terms of imprisonment. Practically all the evidence used by the Government to convict defendants came from court-approved wiretaps. Defendants appealed their convictions to the Fifth Circuit and on January 30, 1973, the Fifth Circuit remanded the case to this court for further consideration in light of its *en banc* opinion in United States v. Robinson, 472 F.2d 973 (5th Cir. 1973). As in United States v. Stanley, 360 F.Supp. 1112 (N.D.Ga.1973) decided by this court, the issue in this case is whether the misidentification in an application for a wiretap order and in the order itself of the person who authorized the application requires suppression of the fruits of the wiretap. For the reasons given in the *Stanley* case the court concludes that suppression is required.

This case was the first one in the country in which a challenge was made to the procedures followed by the Department of Justice in applying for a wiretap order under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (1970) ["Title III"]. Since this case is inextricably bound with a Florida case involving the Sklaroff defendants, the court believes that a complete narrative of both cases and a description of how the challenge arose and in what manner it was disposed of by this court are in order.

Sometime in the Spring of 1969 William G. Earle, an attorney in the Criminal Division of the United States Department of Justice, Miami, Florida, requested authorization from the Department to apply to a federal judge for a wiretap order to intercept communications among the defendants and others. Thereafter, John N. Mitchell, then the Attorney General of the United States, initialed a memorandum dated June 16, 1969, and directed to Will Wilson, then the Assistant Attorney General in charge of the Criminal Division, which is entitled "Interception Order Authorization" and which states in part:

"This is with regard to your recommendation that authorization be given to William G. Earle of the Criminal

Division to make application for an interception order under 18 United States Code 2518 . . . in connection with the investigation into possible violations of 18 United States Code 1084 by Martin Sklaroff and Jesse Sklaroff and others.

"Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby *specially designated* to authorize William G. Earle to make the above described application." (Emphasis added).

Under 18 U.S.C. § 2516 "the Attorney General, or any Assistant Attorney General *specially designated* by the Attorney General, may authorize an application to a Federal judge" (emphasis added) for a wiretap order.

A letter dated June 16, 1969, bearing the signature "Will Wilson," was sent to Earle, which states in part:

"This is with regard to your request for authorization to make application . . . for an order of the court authorizing the Federal Bureau of Investigation to intercept wire communications . . . .

"I have reviewed your request and the facts and circumstances detailed in the affidavit of Special Agent Edwin J. Sharp and have determined that probable cause exists to believe that Martin Sklaroff, Jesse Sklaroff, and others are engaged in the commission of an offense enumerated in Section 2516 of Title 18, United States Code . . . . I have further determined that there exists probable cause to believe that the above persons will make use of the described facilities in connection with that offense, that wire communications concerning the offenses will be intercepted, and that normal investigative procedures are unlikely to succeed or are too dangerous to be used.

"Accordingly, you are hereby authorized *under the power specially delegated to me* in relation to the above described offenses by the Attorney General pursuant to the power conferred on the Attorney General by Section 2516, Title 18, United States Code, to make application to a judge of competent jurisdiction for an order pursuant to Section 2518 of Title 18, United States Code, authorizing the Federal Bureau of Investigation to intercept wire communications from the facilities described above." (Emphasis added).

Relying on this letter, Earle applied to Judge William O. Mehrtens of the Southern District of Florida for a wiretap order. Under 18 U.S.C. § 2518(1)(a) every application for a wiretap order must include "the identity of . . . the officer authorizing the application." Earle's application states in part:

"The Attorney General of the United States has specially designated in this proceeding, the Assistant Attorney General for the Criminal Division to exercise the powers conferred upon him by § 2516 of Title 18, and *the Assistant Attorney General of the Criminal Division has, in turn, authorized the affiant* [Earle] *to make this application* for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A." (Emphasis added).

The only documents attached to the application submitted to Judge Mehrtens were Exhibit A—the letter bearing the signature "Will Wilson"—and Exhibit B —the affidavit of the special agent who investigated defendants' activities. The Mitchell memorandum was not attached to the application or referred to in it.

On June 17, 1969, Judge Mehrtens issued an order authorizing the wiretaps in question. Under 18 U.S.C. § 2518(4)(d) every wiretap order must specify "the identity of . . . the person authorizing the application." Judge Mehrtens' order states that it is "based on the facts disclosed by said [Earle's] application and on the affida-

vit and supporting documents," and it directs, in part, that:

"The Federal Bureau of Investigation of the United States Department of Justice is authorized *pursuant to application authorized by the Assistant Attorney General for the Criminal Division* of the Department of Justice, who has been specially designated in this proceeding by the Attorney General of the United States to exercise the powers conferred upon him by Section 2516, Title 18, United States Code, to:

"A. Intercept the wire communications of . . . ." (Emphasis added).

As a result of Judge Mehrtens' order the Government intercepted communications among defendants and others and amassed sufficient evidence of criminal activities on their part to enable it to commence prosecutions against the Sklaroff defendants and others in the Southern District of Florida, the Northern District of Georgia, and elsewhere. In a pre-indictment civil proceeding in the Southern District of Florida the Sklaroff defendants and others challenged, among other things, the legality of the court-approved wiretaps. The Florida challenge was broadly based, but it consisted in relevant part of the three-part claim that (1) Earle's application was insufficient because it referred to proposed interceptions of telephone numbers different from the numbers referred to in the letter of authorization bearing the signature "Will Wilson," (2) Judge Mehrtens' order was insufficient because it was undated, and (3) Judge Mehrtens' order was insufficient because it referred to the Attorney General of the United States and the Assistant Attorney General for the Criminal Division by title only and not by name. Judge Mehrtens, before whom this challenge was made, held a hearing on the challenge. During the hearing counsel for the Government referred to the third prong of the three-part claim and stated the following:

"He [counsel for one of the petitioners] also makes the highly technical objection, among others, that the person authorizing the order is not identified. There is only one Assistant Attorney General for the Criminal Division in the United States, and that man can be identified at any time, anywhere by simple reference to the index of federal officials. He happens to be at this moment Will Wilson, as your Honor is well aware.

"It is stated on Page 2 [of Judge Mehrtens' order], in the last paragraph, 'The Federal Bureau of Investigation is authorized, pursuant to an application authorized by the Assistant Attorney General for the Criminal Division of the Department of Justice.' *I don't know how it could be any clearer.*" (Emphasis added). Record, vol. III, doc. 29, exhibit A–2, at 284, United States v. Sklaroff, appeal docketed, No. 71–3192, 5th Cir. November 4, 1971. ["Record"].

Judge Mehrtens ruled adversely to the Sklaroffs and the others on all parts of the challenge to the wiretaps in an order filed September 3, 1969, and the Sklaroffs and the others appealed that ruling to the Fifth Circuit. At the appellate level all issues were fully briefed by all parties. In its brief the Government refers numerous times to the fact that authorization for Earle to apply for a wiretap order had come from the Assistant Attorney General for the Criminal Division, Record, vol. III, doc. 29, appellee's brief, at 5, 9, 22, 29, 30 and 33, and as for the third prong of the three-part claim concerning the identification of the authorizing official the brief states:

"It appears that Appellant . . . is 'nit-picking' the wiretap order here. There is only one Attorney General for the Criminal Division, just as there is only one President of the United States, and one Chief Justice of the United States Supreme Court. The wiretap order clearly states that *the Assistant Attorney General for the Criminal Division,* specially desig-

nated by the Attorney General of the United States to exercise the function of authorizing electronic surveillance applications, *authorized this application.* This satisfies 18 U.S.C. 2516(1), which is intended to centralize 'in a publicly responsible official subject to the political process the formulation of law enforcement policy on the subject of electronic surveillance techniques . . . . [*sic*] Should abuses occur, the lines of responsibility lead to a responsible person.' (Senate Report 1097, supra, pages 2112, 2185).

"This alleged issue is utterly without merit. Indeed, it appears frivolous." (Emphasis added). Record, vol. III, doc. 29, appellee's brief, at 33.

On May 22, 1970, the Fifth Circuit dismissed the appeal on the ground that Judge Mehrtens' order was not appealable. Application of United States, 427 F.2d 1140 (5th Cir. 1970).

One thing that clearly emerges from this stage of the Florida case is that it was the Government's steadfast position that the official who authorized Earle's application for a wiretap order was Will Wilson, then the Assistant Attorney General for the Criminal Division. Indeed, the Government labeled any challenge to this position frivolous. It is also obvious that the defendants in the Florida case and Judge Mehrtens understood that authorization had come from the Assistant Attorney General.

Prior to the time defendants and one Elmer Dudley were indicted in the case now before this court, Dudley, who was also one of the defendants in the Florida case, instituted a civil proceeding in this court seeking the return of certain property and the suppression of certain evidence from any future prosecution. In that civil action Dudley contended, among other things, that since the search warrant he was attacking was based on an affidavit which contained information obtained from the wiretaps approved by Judge Mehrtens, and since Judge Mehrtens' order approving the wiretaps was undated and therefore, allegedly, insufficient under Title III, the affidavit was insufficient, the search warrant invalid, and the search illegal. Dudley's civil action was considered by Chief Judge Sidney O. Smith, Jr. of this court who, in an order filed January 7, 1970, ruled that the absence of a date in Judge Mehrtens' original order, which was later cured by a *nunc pro tunc* order September 3, 1969, was inconsequential. Dudley v. United States, 320 F.Supp. 456 (N.D.Ga.1970). An appeal taken from Judge Smith's ruling was dismissed by the Fifth Circuit without opinion. Dudley v. United States, No. 29382 (5th Cir. May 13, 1970).

Indictments were filed against defendants and Dudley in the above-styled case on March 4, 1970, and against the Sklaroffs and others in the Southern District of Florida on March 25, 1970. Motions to suppress were filed by defendants in the above-styled case in June and July, 1970, and those motions raised, among other things, the same three-part claim against the wiretaps that had been raised in the pre-indictment proceeding in Florida and partially in the pre-indictment proceeding in this court. Instead of filing a legal brief in response to the motions to suppress, the Government incorporated by reference its memorandum of law filed in the pre-indictment proceeding in this court and its brief filed in the Fifth Circuit in the appeal of the Florida pre-indictment proceeding. Thus the Government incorporated by reference in this case the unwavering position that the official who authorized Earle's application for a wiretap order was Will Wilson, then the Assistant Attorney General for the Criminal Division.

In an order filed October 1, 1970, this court announced that it was disposed to accept Judge Mehrtens' ruling on the wiretap issue. However, it ordered a hearing to determine the extent to which the defendants were bound by the prior rulings of Judge Mehrtens and Judge Smith.

Meanwhile, the defendants in the Florida case, including the Sklaroffs and Dudley, filed post-indictment motions to suppress which, among other things, again raised the three-part claim against the wiretaps. A full evidentiary hearing on those motions was held before Judge Ted Cabot of the Southern District of Florida on October 15–16, 1970. During that hearing testimony was taken from Earle, and he made several references to the fact that the Assistant Attorney General had authorized him to apply for a wiretap order. Record, vol. IV, doc. 42, at 50, 97, 99, 172. His direct testimony on the matter was as follows:

"Q. [Counsel for Sklaroffs] Did you have occasion to receive communications from Washington concerning the affidavit and application?

"A. [Earle] You mean the authorization by the Assistant Attorney General to proceed with the application?

"Q. Yes, sir.

"A. Yes.

. . . . . .

"Q. Showing you Defendants' Exhibit No. 10, purporting to be an authorization from MR. [sic] Will Wilson, can you identify that document?

"A. Yes. This is a letter of authorization that the Assistant Attorney General sent to me to authorize me to go to the Court to get the order." Record, vol. IV, doc. 42, at 97, 99.

On February 11, 1971, Judge Cabot entered an order which, among other things, adopted Judge Mehrtens' prior opinion and order overruling the three-part claim against the wiretaps and which denied the motions to suppress. United States v. Sklaroff, 323 F.Supp. 296, 316 (S.D.Fla.1971).

A transcript of the evidentiary hearing held before Judge Cabot was filed by the Government in this court in the instant case on August 25, 1971. At a pretrial hearing held before this court on August 30, 1971, the parties agreed to stand on the record made before Judge Cabot and dispense with any additional hearings on the motions to suppress. On September 9, 1971, this court filed an order in which it denied defendants' motions to suppress and the three-part claim against the wiretaps on the basis of Judge Cabot's ruling in the Florida case.

Thus on the eve of trial in this case all the parties, lawyers, and judges who had been involved in any way were of the unanimous understanding that authorization for the wiretap application submitted by Earle had come from Will Wilson, then the Assistant Attorney General for the Criminal Division of the Justice Department.

On September 13, 1971, the morning the trial was to begin, James J. Hogan, counsel for the Sklaroff defendants, made a startling announcement, the impact of which has affected hundreds of criminal prosecutions involving court-approved wiretaps across the country. Mr. Hogan stated that while he was engaged in final trial preparation he discovered at least three or four different types of "Will Wilson" signatures on letters of authorization for wiretap applications. This led him to conclude that Will Willson had not signed these letters and had not authorized the applications. Mr. Hogan then renewed his motion to suppress on the new ground that 18 U.S.C. § 2516 had not been complied with because Will Wilson, the Assistant Attorney General, had not authorized Earle to apply for a wiretap order. Record, vol. I, doc. 2, at 2–7. The Government was unprepared to rebut Mr. Hogan's new challenge with anything other than hearsay, although it did tender into evidence a copy of John N. Mitchell's memorandum of June 16, 1969, to Will Wilson. The court decided to let the trial proceed and to reserve a ruling on Mr. Hogan's renewed motion to suppress until after trial and an evidentiary hearing on the matter. Record, vol. I, doc. 2, at 16–18.

On the last day of trial, September 17, 1971, after the jury had retired to begin

its deliberations, the Government was given permission to complete the record by tendering into evidence an affidavit of Will Wilson, then the Assistant Attorney General for the Criminal Division, which was dated September 15, 1971, and an affidavit of Henry E. Petersen, then Deputy Assistant Attorney General for the Criminal Division, which was dated September 16, 1971, as well as a copy of the letter bearing the signature "Will Wilson" which was dated June 16, 1969, and which had been sent to Earle. Record, vol. I, doc. 2, at 863–871; vol. IV, doc. 51. Wilson's affidavit averred that he authorized Petersen and another Deputy Assistant Attorney General for the Criminal Division, Harold Shapiro, to sign his name to letters of authorization for wiretap applications after such applications had been approved by the Attorney General, and that the letter authorizing Earle to apply for a wiretap order had been signed for him by Petersen pursuant to his authorization. Petersen's affidavit averred that the Attorney General directed that all wiretap applications be submitted to the Attorney General, that following the authorization of each application by the Attorney General notification to the applicant that he is authorized to present the application be sent to the applicant by the Criminal Division, that in accordance with the authorization of Will Wilson and the standard procedures of the Criminal Division Petersen frequently signed that letter to the applicant, and that, in fact, Petersen signed Will Wilson's name to the letter sent to Earle upon receipt of Mitchell's memorandum of June 16, 1969.

Later that same day, September 17, 1971, the jury returned verdicts convicting defendants.

On September 29, 1971, defendants filed a supplemental motion to suppress in which they recited the newly discovered facts and requested an evidentiary hearing on the question of authorization. On October 8, 1971, the Government filed a memorandum in opposition to this supplemental motion. Record, vol.

IV, doc. 56. In its memorandum the Government for the first time took the position that there had been *two* authorizations for Earle's application. The first authorization, it said, came from John N. Mitchell, then the Attorney General, and was evidenced by his memorandum of June 16, 1969, to Wilson. The second authorization came from Wilson and was evidenced by the letter sent to Earle. This second authorization, the Government now argued, was actually superfluous in the face of Mitchell's prior authorization. Nevertheless, the second authorization from Wilson was a proper and genuine authorization from him to Earle, stated the Government, and Petersen simply performed a "ministerial act" in placing Wilson's signature on the letter to Earle.

Oral argument on the new motion was received by the court at the sentencing proceedings on October 21, 1971. Defendants again requested an evidentiary hearing on the issue of authorization. In support of their request they tendered to the court copies of three documents pertaining to a wiretap authorization requested by William L. McCulley of the Criminal Division of the Justice Department to tap telephones used by one Samuel Green in North Miami Beach, Florida. Record, vol. I, doc. 2, at 898–899; vol. IV, doc. 52, attachments. One of these documents was a memorandum dated October 21, 1970, from John N. Mitchell, then the Attorney General, to Will Wilson, then the Assistant Attorney General for the Criminal Division, which was very similar to the memorandum sent by Mitchell to Wilson in the present case. The second document was an affidavit of Harold Shapiro, Deputy Assistant Attorney General for the Criminal Division, which was dated September 30, 1971, and which averred that Shapiro signed Will Wilson's name to a letter dated October 21, 1970, which was sent to William L. McCulley and which authorized him to apply for a wiretap order to tap telephones in North Miami Beach, Florida. This affidavit was similar to the affidavit of Petersen in the

present case. The third document, however, was unusual. It was an affidavit of Will Wilson, then the Assistant Attorney General for the Criminal Division, which was dated September 30, 1971, and which averred that Wilson was not in Washington, D. C. at the time the McCulley request was processed, that Wilson had not read the file on the request at the time it was acted upon, and that Wilson had no independent recollection of the request at all. Counsel for defendants argued that Mitchell's memorandum of June 16, 1969, to Wilson in the present case, upon which the Government was now basing its new position that Mitchell had authorized Earle's application, showed on its face that Mitchell had delegated the authorization decision to Wilson, and that in view of the Wilson affidavit concerning the McCulley request there was a question of fact as to whether Wilson himself authorized Earle's application at all, despite the Government's continued insistence that he had.

The Government objected to defendants' reference to the McCulley documents and said they bore no relation to the present case. This was apparently in keeping with the Government's position that Wilson had, in fact, authorized Earle to apply for a wiretap order. The Government went on to emphasize that Mitchell had independently authorized the Earle application, as evidenced by his memorandum of June 16, 1969, to Wilson. Record, vol. I, doc. 2, at 900–901, 903–904.

At the close of oral argument the court expressed its view that authorization for Earle to apply for a wiretap order did come from Mitchell and that such authorization complied with that part of Title III dealing with the authorization requirement. Record, vol. I, doc. 2, at 906–908. For this reason the court orally denied defendants' renewed and supplemental motions to suppress. This oral ruling was confirmed by a written order filed October 26, 1971, which did not specify the grounds for the denial.

Two important points should be made about this case history. The first is that notwithstanding its admission that Petersen signed Wilson's name to the letter to Earle, the Government's undeviating and final position in this court up to the remand order of the Fifth Circuit was that Wilson himself properly and genuinely, albeit superfluously, authorized Earle to apply for a wiretap order. The second is that defendants' renewed and supplemental motions went solely to the issue of authorization of Earle's application—that is, compliance with 18 U.S.C. § 2516. At no time did defendants raise any issue as to the identification of the authorizing official in Earle's application or in Judge Mehrtens' order as required by 18 U.S.C. § 2518(1)(a) and 18 U.S.C. § 2518(4)(d). It should be noted that both the application and the order identified the Assistant Attorney General as the authorizing official and that this was not inconsistent with the final position taken by the Government in this case prior to the remand order of the Fifth Circuit.

In its *en banc* decision in United States v. Robinson, *supra,* the Fifth Circuit directed the district court to hold an evidentiary hearing to determine whether the wiretap applications in that case were properly authorized under 18 U.S.C. § 2516(1). Accordingly, the court understood the import of the remand order of January 30, 1973, in this case to be that the Fifth Circuit wanted this court, too, to hold an evidentiary hearing on the authorization question. The *Robinson* case was remanded, as it happened, to Judge Mehrtens, as were several other cases, including the Florida case involving the Sklaroffs. When this court was informed that Judge Mehrtens was going to hold a full evidentiary hearing and would receive live testimony from John N. Mitchell, Will Wilson, Henry E. Petersen, and others, it transferred this case to Judge Mehrtens on March 14, 1973, for the purpose of receiving testimony. All counsel were notified of the transfer and attend-

ed the hearing held before Judge Mehrtens on March 19–20, 1973. On April 23, 1973, Judge Mehrtens transferred this case back to this court.

In view of the Fifth Circuit's remand order, this court is now bound to make additional findings of fact and conclusions of law in this case. This means the court must base its findings and conclusions not on the record but on testimony taken after the case had been closed and was on appeal. As this court noted in the *Stanley* case, if left to its own devices, it might well have agreed with Judge Merhige in United States v. Boone, 348 F.Supp. 168, 170 (E.D.Va. 1972) that such "after the fact" evidence, dehors the record, is immaterial and irrelevant. However, as already noted, the court's interpretation of the remand order requires it to base its findings and conclusions on the testimony taken before Judge Mehrtens rather than on the record. Indeed, in an order filed March 9, 1973, Judge Dyer, for the Fifth Circuit, denied the Government's motion for a rehearing on the remand order of January 30, 1973, "without prejudice to the Government's use in the district court of the depositions of former Attorney General John N. Mitchell, . . . former Assistant Attorney General Will Wilson, . . . [and] former Deputy Assistant Attorney General Henry E. Petersen."

The testimony taken before Judge Mehrtens relevant to the present case can be summarized very briefly:

(1) Mitchell testified that he authorized the Earle application. Record at 37, 41–44, In the Matter of Evidentiary Hearing in Case No. 71–414–Cr., et al. (S.D.Fla. March 19–20, 1973);

(2) Wilson testified that he neither reviewed Earle's request nor the facts and circumstances of the investigation in this case, that he made no "probable cause" determinations in this case, that the authorization decision was made by Mitchell in this case, and that Petersen signed Wilson's name to the letter sent to Earle pursuant to Wilson's general oral approval to sign his name to such letters. *Id.* at 257–263;

(3) Petersen testified that, pursuant to an "oral understanding" with Wilson that he could sign Wilson's name to certain documents, he signed Wilson's name to the letter to Earle. *Id.* at 136–137.

On the basis of this testimony it can be seen that the Government's position, stoutly maintained *even after* it acknowledged that Wilson had not signed the letter to Earle, that Wilson himself properly and genuinely authorized the Earle application, is completely erroneous. Indeed, it is a matter of some concern to the court, to say the least, that Mr. Wilson did not see fit to state in his affidavit to this court, as he had in the affidavit concerning the McCulley wiretap application from North Miami Beach, Florida, that he had nothing whatever to do with the processing or authorization of the Earle application. Apparently, Mr. Wilson did not even inform his own Justice Department lawyers of this at the time he submitted the affidavit.

In any event, the court must now find as fact, on the basis of the testimony taken before Judge Mehrtens after this case was remanded by the Fifth Circuit, that:

(1) John N. Mitchell, then the Attorney General, authorized Earle to apply for a wiretap order in this case;

(2) The letter of June 16, 1969, sent to Earle is false insofar as it states that Will Wilson reviewed Earle's request and the facts and circumstances of the investigation and that he made certain "probable cause" determinations, the letter was signed not by Wilson but by Henry E. Petersen who signed Wilson's name, and the portion of the letter emphasized by the court earlier in this opinion is misleading in that it suggests that Mitchell delegated the authorization decision to Wilson whereas, in fact, Mitchell made the authorization decision himself;

(3) The portion of Earle's application emphasized by this court earlier in this

362

opinion is false because it states that the Assistant Attorney General of the Criminal Division authorized the application whereas, in fact, the Attorney General authorized the application;

(4) Earle's application to Judge Mehrtens does not identify John N. Mitchell, then the Attorney General, as the officer who authorized the application;

(5) The portion of Judge Mehrtens' order approving the wiretaps in this case which was emphasized by this court earlier in this opinion is false [1] because it states that Earle's application was authorized by the Assistant Attorney General for the Criminal Division whereas, in fact, it was authorized by the Attorney General;

(6) Judge Mehrtens' order does not identify John N. Mitchell, then the Attorney General, as the person who authorized Earle's application.

On the basis of these findings of fact the court concludes, as a matter of law, that Earle's application does not comply with the requirements of 18 U.S.C. § 2518(1)(a) because it fails to include the identity of the officer who authorized it, and that the order issued by Judge Mehrtens approving the wiretaps in this case does not comply [2] with the requirements of 18 U.S.C. § 2518(4) (d) because it similarly fails to specify the identity of the person who authorized Earle's application. Furthermore, the court concludes, as a matter of law, that Judge Mehrtens' order can now be seen to lack a statutory foundation under § 2518(3) and § 2516(1) for the reasons given by the court in the *Stanley* case.

In view of these conclusions the court must also conclude that, as explained in the *Stanley* case, pursuant to 18 U.S.C. § 2515 no part of the contents of the communications intercepted in this case and

no evidence derived therefrom should have been received in evidence. It follows that defendants' motion to suppress should have been granted by this court.

## ORDER

In the *Robinson* remand order the Fifth Circuit instructed the district court to make findings of fact and conclusions of law which, with the complete record, would be forthwith transmitted back to the Fifth Circuit. United States v. Robinson, *supra*, 472 F.2d at 974–975. Since the present case was remanded to this court for further consideration in light of *Robinson*, it would follow that the same course of action is appropriate, and that any remedial action necessary will be taken by the Fifth Circuit. Therefore, this court will conclude with language that every district judge has always wished to employ:

This case is hereby remanded to the Fifth Circuit for further consideration not inconsistent herewith.

It is so ordered.

---

1. Judge Mehrtens' order recites that it was "based on the facts disclosed by said [Earle's] application and on the affidavit and supporting documents." Thus the falsity in Judge Mehrtens' order was

caused by the falsity in Earle's application and in the letter sent to Earle bearing the signature "Will Wilson."

